*270 MARKMAN, J.
We heard oral argument on defendant employer’s application for leave to appeal to consider whether the burden-shifting analysis articulated by the Court of Appeals relieved claimant of the burden of proving that he was disabled from all jobs paying the maximum wages within his qualifications and training, as required by Sington v Chrysler Corp, 467 Mich 144; 648 NW2d 624 (2002). A workers’ compensation claimant bears the burden of proving that he has a disability under MCL 418.301(4), and that burden does not shift to the employer. MCL 418.851. The claimant must show more than a mere inability to perform a previous job. Once the claimant proves that he is disabled from all jobs within the claimant’s qualifications and training, the burden of production shifts to the employer contesting the claim to come forward with evidence to challenge the claimant’s proof of disability, and the employer is entitled to discovery before the hearing to enable the employer to meet this production burden. Here, claimant did not sustain his burden of proving by a preponderance of the evidence that he was disabled from all jobs within his qualifications and training. However, given the inconsistent application of the Sing-ton standard in the past, we believe that it would be equitable to allow claimant an opportunity to present his proofs with the guidance provided by this opinion. Accordingly, we reverse the Court of Appeals in part and remand the matter to the magistrate for a new hearing consistent with the procedures set forth in this opinion.
I. FACTS AND PROCEDURAL HISTORY
Claimant was a forklift driver for the employer from 1971 to 1999. During his last five years, claimant drove a forklift for about five hours a day and performed dispatch work by entering automotive part numbers on *271 a keyboard or relaying information over the telephone the rest of the day. Claimant increasingly felt pain in his neck and arms until he could no longer work in the fall of 1999. Claimant’s physician opined that claimant’s physical activity at work caused repetitive trauma to his cervical spine and aggravated his existing rheumatoid arthritis. On February 15, 2000, claimant had surgery on his cervical spine.
Claimant filed a petition for workers’ compensation benefits based on a cervical spine disability. Both experts agreed that claimant was totally disabled from his job, but the employer’s expert asserted that the sole cause of the disability was claimant’s pre-existing rheumatoid arthritis. The magistrate granted claimant an open award of benefits, relying on Haske v Transport Leasing, Inc, Indiana, 455 Mich 628, 662; 566 NW2d 896 (1997), which defined “disability” as an injury that prevents the employee from performing any single job within his qualifications and training. The Workers’ Compensation Appellate Commission (WCAC) affirmed the finding that claimant’s disability was work-related, but remanded the case to the magistrate for reconsideration of the disability issue under the standard set forth in Sington, which overruled Haske during the pendency of this case.
Before the remand hearing, the employer filed a motion to compel claimant to submit to an interview by the employer’s vocational rehabilitation counselor, but the magistrate denied the motion. At the remand hearing, the employer’s vocational expert stated that he could not testify with regard to claimant’s wage-earning capacity because he needed to complete a ‘transferable-skills’ analysis but had not met with claimant and had only been retained four days before the hearing. Defense counsel requested an adjournment or continuance *272 to allow the vocational expert to perform the analysis. The magistrate denied the employer’s motion to adjourn because the employer had failed to provide its expert with any of the information already in the employer’s possession.
At the remand hearing, claimant testified that he had graduated from high school but had no vocational training. Claimant attended college for brief periods both before and during his employment with the employer, but did not obtain a degree or certification. He had no typing or computer skills, and his only jobs before working for the employer consisted of driving a forklift for a refrigerator warehouse and stocking supplies and materials. Claimant had not worked since leaving his employment with the employer. The magistrate determined that claimant met the Sington standard for disability and again granted claimant an open award of benefits.
The WCAC affirmed, concluding that a claimant’s qualifications and training consist of the claimant’s previous jobs, how much the jobs paid, and the training the claimant received at those jobs. The WCAC stated that the claimant was not required to show other skills he possessed that might transfer to another job. The WCAC also concluded that the magistrate had not abused his discretion in denying the employer’s request for an adjournment and that the magistrate did not have the authority to compel claimant to meet with the vocational expert.
The employer sought leave to appeal in the Court of Appeals, but also sought bypass review in this Court. We entered an order denying the bypass application, but directing the Court of Appeals to grant the application and issue its opinion by October 1, 2006. The order stayed the WCAC’s opinion and stated that Boggetta v *273 Burroughs Corp, 368 Mich 600; 118 NW2d 980 (1962),[1] remained controlling authority. 475 Mich 875 (2006).
The Court of Appeals, in a split decision, affirmed the award of benefits, but vacated several portions of the WCAC opinion that were inconsistent with Sington and Boggetta, in particular discussions regarding loss of wages and partial disability. Stokes v DaimlerChrysler Corp, 272 Mich App 571, 588, 593-594, 597; 727 NW2d 637 (2006). The Court of Appeals held that suitable work “is not limited to the jobs on the employee’s resume, but, rather, includes any jobs the injured employee could actually perform upon hiring.” Id. at 588. However, the Court of Appeals then decided that the WCAC had not erred in holding that, “as a practical matter, an employee’s proofs will generally consist of the equivalent of the employee’s resume” and held that such proofs “in addition to evidence of a work-related injury causing the disability” were adequate to establish a “prima facie case of disability.” Id. at 589. The “prima facie case,” in turn, was adequate to establish a compensable disability unless the employer established the existence of real jobs within the employee’s training and experience that paid the maximum wage. Id. at 590. The Court of Appeals further stated that a transferable-skills analysis could be relevant in evaluating the claimant’s qualifications and training, but was not required. Id. at 590-591. Finally, the Court of Appeals held that the magistrate possessed the authority to order discovery, but had not abused his discretion in concluding that an interview was unnecessary in this case because the *274 employer had sufficient information in the form of prior testimony to give to the vocational expert. Id. at 593-597.
The dissenting judge would have reversed the WCAC decision and remanded to the magistrate because the latter’s actions “effectively prevented defendant from preparing and presenting a defense,” the inquiry into whether claimant possessed any other transferable skills was improperly limited by considering only claimant’s employment history, and the WCAC erroneously concluded that the employer had the burden of proving the existence of jobs within the claimant’s qualifications and training. Id. at 598-601.
The employer sought leave to appeal in this Court. We directed the clerk to schedule oral argument on whether to grant the application or to take other peremptory action. 477 Mich 1097 (2007).
II. STANDARD OF REVIEW
Findings of fact made by the WCAC are conclusive in the absence of fraud. Mudel v Great Atlantic & Pacific Tea Co, 462 Mich 691, 701; 614 NW2d 607 (2000). We review de novo questions of law in final orders of the WCAC. DiBenedetto v West Shore Hosp, 461 Mich 394, 401; 605 NW2d 300 (2000).
III. ANALYSIS
A. BURDEN OF PROOF TO ESTABLISH A DISABILITY
A claimant under the Worker’s Disability Compensation Act (WDCA) must prove his entitlement to compensation and benefits by a preponderance of the evidence. MCL 418.851; Aquilina v Gen Motors Corp, 403 Mich 206, 211; 267 NW2d 923 (1978). MCL 418.301(4) provides:
*275 As used in this chapter, “disability” means a limitation of an employee’s wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work related disease. The establishment of disability does not create a presumption of wage loss.[2]
Rea v Regency Olds/Mazda/Volvo, 450 Mich 1201, 1201 (1995), addressed the burden of proof required to establish a disability:
It is not enough for the claimant claiming partial disability to show an inability to return to the same or similar work. If the claimant’s physical limitation does not affect the ability to earn wages in work in which the claimant is qualified and trained, the claimant is not disabled.
Haske, supra at 662, overruled Rea, stating: “Where the employee has carried his burden of proving wage loss, he will, as a practical matter, have proven that he is unable to perform a single job within his qualifications and training, and, therefore, that he is disabled.”
Subsequently, MCL 418.301(4) was examined thoroughly in Sington, supra at 155-159:
As this language plainly expresses, a “disability” is, in relevant part, a limitation in “wage earning capacity” in work suitable to an employee’s qualifications and training. The pertinent definition of “capacity” in a common dictionary is “maximum output or producing ability.” Webster’s New World Dictionary (3d College ed). Accordingly, the plain language of MCL 418.301(4) indicates that a person suffers a disability if an injury covered under the WDCA results in a reduction of that person’s maximum reasonable wage earning ability in work suitable to that person’s qualifications and training.
*276 So understood, a condition that rendered an employee unable to perform a job paying the maximum salary, given the employee’s qualifications and training, but leaving the employee free to perform an equally well-paying position suitable to his qualifications and training would not constitute a disability.
[T]he language of § 301(4) requires a determination of overall, or in other words, maximum, wage earning capacity in all jobs suitable to an injured employee’s qualifications and training.
Sington, supra at 161, continued by explicitly overruling the burden of proof set forth in Haske because it was inconsistent with MCL 418.301(4). At the same time, Sington, supra at 156-157, 161, reinstated the prior ruling of Rea, concluding that the procedure established in Rea was harmonious with the statute.
Thus, the standard for establishing a prima facie case of disability under Sington requires that the claimant prove a work-related injury, and that injury must result in a reduction of the claimant’s maximum wage-earning capacity in work suitable to his qualifications and training. Sington, supra at 155. The WCAC has struggled in consistently applying this standard since Sington.
B. BURDEN OF PROOF SINCE SINGTON
Since Sington, lower courts and tribunals have closely analyzed a claimant’s burden of proof, but the application of that standard has arguably been inconsistent. In Kethman v Lear Seating Corp, 2003 Mich ACO 205, p 6, the WCAC interpreted Sington to require the claimant to demonstrate
*277 1. his work qualifications and training, and what jobs they translate to, and
2. that he has a work-related physical or mental impairment which does not permit him to perform jobs within his qualifications and training and that he has lost wages, and
3. that he is either unable to perform or cannot obtain employment at all those jobs within his qualifications and training that pay his maximum income, which are reasonably available.
The WCAC then stated that, after the claimant proves these three factors, the burden of going forward shifts to the employer, which may present evidence that there were jobs within the claimant’s qualifications, training, and physical limitations that were reasonably available. Id. at 7. This analysis, in our judgment, constitutes an accurate summation of the Sington standard.
In Peacock v Gen Motors Corp, 2003 Mich ACO 274, p 19, the WCAC sought to define “qualifications and training,” stating that this phrase encompasses formal education, work experience, special training, skills, and licenses. In addition, the WCAC described “suitable” jobs as a phrase that did not delimit the universe of potential jobs, but, rather, included “those jobs that afford a plaintiff an opportunity for consideration to be hired because he possesses the minimum experience, education, and skill.” Id. at 20. The WCAC’s definitions, in our judgment, again constitute accurate summations of these terms.
In Riley v Bay Logistics, Inc, 2004 Mich ACO 27, p 7, the WCAC attempted to harmonize existing caselaw by summarizing the Sington factors required to prove a threshold disability as follows:
1. Has plaintiff established the universe of jobs for which he is qualified and trained, and how much do they pay?
*278 2. Has plaintiff established his work related physical or mental impairment, which does not permit him or her to perform jobs within his qualifications and training causing him to lose wages?
3. Has plaintiff established that he was either unable to perform (or obtain because such jobs were not reasonably available) all the jobs within his qualifications and training that pay his maximum wage (for the purpose of establishing his Section 301(4) threshold disability).
The WCAC also concluded that once the claimant establishes a prima facie case of disability, the burden of persuasion shifts to the employer. Id.
Numerous WCAC opinions have quoted the tests set forth in Kethman and Riley. However, these opinions have not always been consistent in their application of the Sington standard. There is a tendency to properly set forth the Sington standard, but then to apply the standard in a manner that effectively constitutes a reversion to Haske. One example is Riley itself, in which Sington was applied in a similar manner to that which occurred in the instant case.
While Riley scrupulously analyzed the Sington standard of proof, the application of that standard was less compelling. For example, the WCAC determined that the claimant’s work-related physical restrictions precluded him from performing each job that he had done in the past. Riley, supra at 6, 8. Taking into account that the claimant had only a ninth-grade education and lacked formal training, the WCAC concluded that the claimant was unable to perform any job within his qualifications. Id. The WCAC then inferred that the claimant had thereby established that he could no longer perform the jobs that paid the maximum wage that may have been available. Id. at 8. However, the WCAC opinion did not discuss the possibility that the claimant possessed any skills that could transfer to *279 other job fields. In addition, there was no evidence presented regarding the availability of other jobs or the claimant’s job search efforts.
The WCAC continued to address the application of the Sington standard in Bacon v Bedford Pub Schools, 2005 Mich ACO 47. The WCAC stated that a claimant carries the burden of establishing which jobs fall within the claimant’s qualifications and training. Id. at 3. However, the WCAC determined that, because of the claimant’s limited education and lack of job training, her testimony regarding her work history, education, and physical condition was sufficient to establish the universe of jobs that the claimant was qualified and trained to perform. Id. at 4, 7. This analysis, we believe, effected a reversion to the Haske standard in the name of Sington.
Similarly, in Higgins v Delphi Automotive Sys, 2005 Mich ACO 136, p 2, the claimant had testified at the hearing regarding her education, work experience, and inability to return to any of her previous jobs because of her work-related injury. The magistrate found that the claimant’s job as an unskilled industrial production worker defined her universe of jobs because her previous jobs had been too remote to be significant. Id. The magistrate concluded that the claimant was disabled because her injury precluded her from performing any of the jobs she had done in the past for the same employer. Id. at 3. The WCAC affirmed, stating that the magistrate had found credible the claimant’s testimony that she was “unable to perform any of the jobs she previously had with defendant.” Id. at 5. Again, the WCAC effectively reverted to the Haske standard in describing the burden of proof.
On the other hand, in Stanton v Great Lakes Employment, 2003 Mich ACO 129, pp 2-3, the claimant’s *280 work-related injury precluded him from being able to perform most of his previous jobs because they required him to stand all day. However, the claimant had applied for an estimated 50 jobs, some of which were the types of jobs he had performed in the past, and others were jobs that he had never performed. Id. at 1-2. The claimant had also contacted the previous employer from which he had earned his highest pre-injury wages but received no offer. Id. at 4. The WCAC determined that the claimant had satisfied the threshold level of disability on the basis of the following factors: the severity of the claimant’s injury; that most of his training and qualifications required significant standing and walking; that the claimant had proved his desire to return to work by applying for an estimated 50 jobs; that the claimant had not been offered employment by his employer or another employer; that the employer had not accommodated the claimant’s physical restrictions; and that no job had been made known to him for which he failed to apply. Id. at 3. The burden of going forward then shifted to the employer, which produced no evidence that there were actual jobs available at the maximum wage within the claimant’s qualifications and training. Id. at 4. Stanton’s application of the Sington standard represented a much more accurate and thorough analysis than the analyses of previous cases.
In Nowak v East Lansing, 2005 Mich ACO 83, pp 1-2, the claimant was a patrol officer who suffered a work-related injury to her knee. The WCAC stated that the magistrate’s finding that the claimant’s work-related injury prevented her from working as a patrol officer did not establish a disability under Sington. Id. at 4. The claimant had continued to work full-time as the head of the parking enforcement unit for the employer and received her full salary. Id. at 4, 8. The WCAC *281 remanded to the magistrate to determine whether the claimant’s new position fell within her qualifications and training, whether it constituted “a regular job for which there was a substantial job market,” and whether the job paid the maximum salary. Id. at 8. If so, then the claimant would not be able to satisfy the definition of “disability” under Sington. Id. Again, this analysis comports with the standard set forth in Sington. If the employer was paying the claimant her full salary because the new job merited that salary, rather than as an accommodation for her injury, then the claimant had not suffered a loss in wage-earning capacity.
Stanton and Nowak represent accurate summations of what is required in the application of Sington to the facts of a WDCA case. A claimant must do more than demonstrate that his work-related injury prevents him from performing a previous job. Sington, supra at 161. It is insufficient to merely articulate the Sington standard and then overlook necessary steps in its application. Rather, MCL 418.301(4) requires that the claimant prove a limitation in “wage earning capacity in work suitable to his qualifications and training resulting from a personal injury or work related disease” to establish a prima facie case of disability. Therefore, the claimant must first prove a work-related injury. Sing-ton, supra at 155. Second, that injury must result in a reduction of the claimant’s wage-earning capacity in work suitable to his qualifications and training. Id. After reviewing the inconsistencies in the WCAC opinions since Sington, we set forth the following practical application of the Sington standard in this case.
First, the injured claimant must disclose his qualifications and training. This includes education, skills, experience, and training, whether or not they are relevant to the job the claimant was performing at the *282 time of the injury. It is the obligation of the finder of fact to ascertain whether such qualifications and training have been fully disclosed.
Second, the claimant must then prove what jobs, if any, he is qualified and trained to perform within the same salary range as his maximum earning capacity at the time of the injury. Sington, supra at 157. The statute does not demand a transferable-skills analysis and we do not require one here, but the claimant must provide some reasonable means to assess employment opportunities to which his qualifications and training might translate. This examination is limited to jobs within the maximum salary range. There may be jobs at an appropriate wage that the claimant is qualified and trained to perform, even if he has never been employed at those particular jobs in the past. Id. at 160. The claimant is not required to hire an expert or present a formal report. For example, the claimant’s analysis may simply consist of a statement of his educational attainments, and skills acquired throughout his life, work experience, and training; the job listings for which the claimant could realistically apply given his qualifications and training; and the results of any efforts to secure employment. The claimant could also consult with a job-placement agency or career counselor to consider the full range of available employment options. Again, there are no absolute requirements, and a claimant may choose whatever method he sees fit to prove an entitlement to workers’ compensation benefits. A claimant sustains his burden of proof by showing that there are no reasonable employment options available for avoiding a decline in wages.
We are cognizant of the difficulty of placing on the claimant the burden of defining the universe of jobs for which he is qualified and trained, because the claimant *283 has an obvious interest in defining that universe narrowly. Nonetheless, this is required by the statute. Moreover, because the employer always has the opportunity to rebut the claimant’s proofs, the claimant would undertake significant risk by failing to reasonably consider the proper array of alternative available jobs because the burden of proving disability always remains with the claimant. The finder of fact, after hearing from both parties, must evaluate whether the claimant has sustained his burden.
Third, the claimant must show that his work-related injury prevents him from performing some or all of the jobs identified as within his qualifications and training that pay his maximum wages. Id. at 158.
Fourth, if the claimant is capable of performing any of the jobs identified, the claimant must show that he cannot obtain any of these jobs. The claimant must make a good-faith attempt to procure post-injury employment if there are jobs at the same salary or higher that he is qualified and trained to perform and the claimant’s work-related injury does not preclude performance.
Upon the completion of these four steps, the claimant establishes aprima facie case of disability. The following steps represent how each of the parties may then challenge the evidence presented by the other.
Fifth, once the claimant has made a prima facie case of disability, the burden of production shifts to the employer to come forward with evidence to refute the claimant’s showing. At the outset, the employer obviously is in the best position to know what jobs are available within that company and has a financial incentive to rehabilitate and re-employ the claimant.
Sixth, in satisfying its burden of production, the employer has a right to discovery under the reasoning *284 of Boggetta if discovery is necessary for the employer to sustain its burden and present a meaningful defense. Pursuant to MCL 418.851 and MCL 418.853,[3] the magistrate has the authority to require discovery when necessary to make a proper determination of the case. The magistrate cannot ordinarily make a proper determination of a case without becoming fully informed of all the relevant facts. If discovery is necessary for the employer to sustain its burden of production and to present a meaningful defense, then the magistrate abuses his discretion in denying the employer’s request for discovery. For example, the employer may choose to hire a vocational expert to challenge the claimant’s proofs. That expert must be permitted to interview the claimant and present the employer’s own analysis or assessment. The employer may be able to demonstrate that there are actual jobs that fit within the claimant’s qualifications, training, and physical restrictions for which the claimant did not apply or refused employment.
Finally, the claimant, on whom the burden of persuasion always rests, may then come forward with additional evidence to challenge the employer’s evidence.
This precise sequence is not rigid, but rather identifies the nature of the proofs that must precede the fact-finder’s decision. Should it become evident in a particular case that a different sequence is more practical, the parties may present their evidence accordingly. However, the magistrate must ensure that all steps are completed in some fashion or another, that all *285 the facts necessary to the determination of the case are presented, that each side has been accorded an adequate opportunity to respond to the other’s proofs, and that the statutory burden of proof is respected. After that point, the magistrate can properly determine whether the claimant has satisfied his obligations under MCL 418.301(4).
We reiterate that MCL 418.851 places the burden of proof on the claimant to demonstrate his entitlement to compensation and benefits by a preponderance of the evidence. This burden of persuasion never shifts to the employer, although the burden of production of evidence may shift between the parties as the case progresses. Because a claimant does not prove a “disability” under MCL 418.301(4) by merely demonstrating the inability to perform any previous jobs, the burden remains on the claimant to demonstrate that there are no available jobs within his qualifications and training that he can perform. Only after the claimant has first sustained this statutory burden of proof does the burden of production shift to the employer to show that there are jobs that the claimant can perform.
C. APPLICATION OF SINGTON STANDARD
The WCAC’s determination that claimant proved a work-related injury is conclusive because there is no evidence of fraud. Mudel, supra at 701. At issue is only whether claimant sustained his burden of proving that his work-related injury effected a reduction of his maximum wage-earning capacity in work suitable to his qualifications and training. Because this is a question of law, we review this issue de novo. DiBenedetto, supra at 401.
We hold that claimant did not satisfy his burden of establishing a disability. Claimant’s demonstration that *286 he could no longer perform his job because of a work-related injury was simply insufficient to establish a “disability” under MCL 418.301(4). In holding to the contrary, we believe that the Court of Appeals and the WCAC short-circuited the requirements of Sington and effected a reversion to Haske.
Under Sington, claimant was required to demonstrate that the injury to his cervical spine limited his maximum wage-earning capacity in work suitable to his qualifications and training. Claimant merely testified regarding his employment and educational background. Claimant presented no evidence that he had even considered the possibility that he was capable of performing any job other than driving a forklift. Likewise, the lower court, the magistrate, and the tribunal seemingly assumed that because claimant had driven a forklift for so many years, that was all he was able to do and that he had acquired no additional skills throughout his life that might translate to other positions of employment. At a minimum, claimant was required by the WDCA to show that he had considered other types of employment within his qualifications and training that paid his maximum wages and that he was physically unable to perform any of those jobs or unable to obtain those jobs. There is no evidence in this case that claimant sought any post-injury employment or would have been willing to accept such employment within the limits of his qualifications, training, and restrictions.
The Court of Appeals opinion effectively relieved claimant of this burden of proof by concluding:
[T]o the extent the WCAC addressed the issue from the standpoint of the production of evidence, and held that as a practical matter, an employee’s proofs will generally consist of the equivalent of the employee’s resume — i.e., a listing and description of the jobs the employee held up until the time of the injury, the pay for those jobs, and a *287 description of the employee’s training and education — and testimony that the employee cannot perform any of the jobs within his qualifications and training paying the maximum wage, the WCAC did not err. By producing such evidence, in addition to evidence of a work-related injury causing the disability, an employee makes a prima facie case of disability — a limitation in the employee’s maximum wage-earning capacity in all jobs suitable to the employee’s qualifications and training. The WCAC did not err in concluding that such a showing is adequate to establish disability in the absence of evidence showing that there is in fact real work within the employee’s training and experience, paying the maximum wage, that the employee is able to perform upon hiring. [Stokes, supra at 589.]
By finding that claimant had met his burden of proof under Sington, in the absence of evidence concerning other jobs for which he might have been qualified, the Court of Appeals suggested strongly that the burden of showing the existence of such jobs is on defendant. It is not.
In this case, claimant did not meet his burden of proving a disability under the WDCA because he only presented evidence of an inability to perform his prior job. However, even if claimant met his burden, the employer was effectively denied the opportunity to rebut claimant’s proofs. The employer’s pre-trial request to have claimant interviewed by the employer’s vocational expert was denied. The employer renewed this request at the remand hearing, but this request was also denied. Because claimant refused to meet with the employer’s vocational expert, and the magistrate was unwilling to compel an interview, the employer’s vocational expert could only provide speculative testimony regarding the effect of claimant’s injury on his wage-earning capacity. The employer’s expert testified that, after interviewing claimant, he would have completed a transferable-skills analysis based on claimant’s *288 profile and work restrictions. Next, the employer’s expert would have contacted potential employers to determine job availability and wages for any jobs falling within claimant’s qualifications, training, and restrictions. The employer requested an adjournment or continuance to allow its expert to perform this analysis, but that request was also denied.
The employer was essentially denied the opportunity to ascertain claimant’s ability to perform other jobs. Not only did the magistrate’s ruling deprive the employer of the ability to present evidence of actual jobs in the marketplace that claimant could have obtained, but the employer was deprived of the ability to assess whether there were any jobs available within its own company that claimant could perform. While the employer was in the best position to know which openings were available within its company, it was not in a position to know all the skills and training claimant had acquired throughout his life that might be compatible with one of the jobs available. The employer was entitled to discovery before the hearing to enable it to meet its burden of coming forward with evidence to rebut claimant’s claim of disability.[4]
*289 IV RESPONSE TO THE DISSENT
The WDCA establishes a careful balance between the employee’s interest in receiving compensation when he suffers a disability as a result of a work-related injury and the employer’s interest in avoiding legally unsound workers’ compensation claims. This Court’s role is to avoid upsetting this bal ance in favor of either party and to ensure that the standards and preconditions for benefits established by the law are maintained. The dissent disregards this law and substitutes its own sense of the balance between the employer and the employee for that of the Legislature.
However, the preferences of the dissent notwithstanding, MCL 418.301(4) requires a workers’ compensation claimant to demonstrate a limitation or reduction in wage-earning capacity. This provision defines a workers’ compensation “disability” to mean a “limitation of an employee’s wage earning capacity in work suitable to his qualifications and training resulting from a personal injury or work related disease.” Thus, to be compensable, something more than an injury is required; specifically, the injury must result in a “limitation of [the] employee’s wage earning capacity” in work for which that employee is suited. Instead of taking this language at face value, the dissent remains wedded to the proposition set forth in Haske, and rejected in Sington, that a claimant may demonstrate a disability merely by showing an inability to perform a single job within his qualifications or training. Whatever the merits of this standard, it is simply not the standard that our Legislature has adopted. In today’s decision, we reiterate Sington’s holding and impose no *290 new requirements on any workers’ compensation claimant. We attempt only to afford guidance in the application of Sington so that future claimants and employers will have the benefit of a consistent and workable standard in assessing their rights and obligations under the law.
Additionally, the employer is entitled to challenge the claimant’s evidence in support of a workers’ compensation claim, it is entitled to have the burden of proof in a workers’ compensation claim remain with the claimant, and it is entitled to secure evidence in its own behalf. In other words, the employer is entitled to avail itself of the law.
The dissent asserts, first, that the majority has indulged in “judicial creativity” to “effectively” require that a claimant provide a transferable-skills analysis in order to evidence a disability. Post at 300-302. Contrary to this assertion, such an analysis does not constitute a requirement on the part of a claimant. While the claimant must present some manner of assessment of alternative employment opportunities to which his qualifications and training might, or might not, translate — precisely to demonstrate that the injury has, in fact, “limited” his wage-earning capacity — this showing need not be in any particular form. The claimant must simply demonstrate in light of his injury that there are no reasonable employment options for avoiding a diminution in wages. If there are such options, a claimant’s wage-earning capacity has obviously not been “limited,” and he is not entitled to benefits; if there are not such options, then the claimant’s wage-earning capacity has equally obviously been limited, and he is entitled to benefits. This all makes eminent sense. There is nothing to be compensated for — at least not in terms of wage reduction — if there has been no *291 reduction in the claimant’s ability to earn his maximum wages. Most people would not find this to be a very problematic understanding; only the dissent sees the sky falling. Sington requires nothing more than the kind of inquiry in which any reasonable person would engage if he became injured outside the workplace and could no longer perform his job. Such a person would naturally inquire, “Is there another job in which I am employable at a similar wage?” Because the dissent considers this too onerous a burden, it would simply read out of the statute any obligation of the claimant to demonstrate a limitation or reduction in his wage-earning capacity. The dissent demonstrates no alternative means by which a reduction in wage-earning capacity can be measured than by actually looking to see whether there are other jobs for which a claimant is qualified.[5]
Claimant here presented no evidence that he considered whether there were any other jobs paying appropriate wages that he could perform, and for this reason his proofs were deficient. Nonetheless, the dissent repeatedly, and confidently, asserts that claimant cannot perform any other job for which he is qualified. It is unclear how the dissent could possibly make this assertion so assuredly. Does the dissent have access to secret information denied the rest of this Court? How can the dissent be certain that claimant cannot perform any *292 other job when neither party has presented evidence to this effect? While the dissent may well be proven correct in the end, there is simply no basis in the present record for making this declaration. There is no way of knowing whether claimant is entitled to benefits until the correct legal standards have been applied, and these standards cannot be applied until the claimant has introduced evidence concerning his wage-earning capacity. Only then can the magistrate render an informed determination of eligibility.
The dissent next asserts that we have indulged in “judicial creativity” to invent the requirement that the employer may be entitled to discovery in attempting to rebut an employee’s claim. Post at 300-301. However, discovery is hardly a novel concept in workers’ compensation proceedings. Rather, it may sometimes be necessary to effect the legislative intent that some, but not all, workplace injuries entitle the worker to benefits; it may sometimes be necessary to enable the magistrate to make a fully informed decision regarding whether a claimant has proven a disability; and it may sometimes be necessary to afford an employer the opportunity to present a meaningful defense.
The dissent asserts that we have “create[d] a new rule of discovery in disability hearings” in holding that the employer has a right to discovery. Post at 307. However, there has been discovery for both sides before the hearing on a regular basis in workers’ compensation proceedings. In O’Brien v Federal Screw Works, 1998 Mich ACO 53, p 4, the WCAC, sitting en banc, affirmed the magistrate’s order directing the defendant to allow a tour of its plant, stating:
In examining the dissenting opinion, we cannot help noting that our colleagues would allow plaintiff to subpoena lab reports, material safety data sheets and any *293 other relevant papers and documents. They would further allow depositions of defendant’s representatives (not specifically provided for in the statute except in the case of medical experts). However, they would not allow the magistrate to order a physical inspection of defendant’s premises, even during the trial (as they define that term), because of a lack of statutory authority.
We cannot agree with this narrow interpretation. As noted, there is no explicit statutory authority which allows for the deposing of lay witnesses. Rather, the common practice of magistrates has long been to err on the side of information rather than ignorance. For this reason, accommodations are regularly made for the taking of lay testimony where necessary (even of plaintiff on occasion) despite the lack of explicit statutory authority.
It is clear that discovery is an integral part of workers’ compensation proceedings that has been consistently upheld by the WCAC. See, e.g., White v Waste Mgt, 2004 Mich ACO 4, p 7 (holding that the employer’s entitlement to a meaningful defense was hindered when the magistrate precluded its vocational expert from meeting with the claimant); Nessel v Schenck Pegasus Corp, 2003 Mich ACO 272, pp 7-8 (stating that, to the extent the claimant or the employer has information regarding the claimant’s qualifications and training, as well as the availability of jobs, such information should be exchanged before the hearing rather than during the hearing); Rochon v Grede Foundries, Inc, 2000 Mich ACO 534, p 6 (upholding the magistrate’s order compelling the answer of more than 200 interrogatories because “magistrates have the power to compel discovery by way of exchange of information, documents, and answers to written interrogatories”).
It is clear from the requirement of MCL 418.301(4) that a claimant prove a limitation' in wage-earning capacity in work suitable to his or her qualifications and training that the Legislature intended to limit the *294 universe of workplace injuries for which a claimant may recover compensation benefits. The only way to give meaningful effect to this intent is to ensure, where appropriate, that evidence is presented regarding the claimant’s qualifications and training, what jobs the claimant is qualified and trained to perform within the maximum salary range, and the claimant’s ability to perform and obtain any of those jobs. Such an analysis will sometimes require a certain amount of discovery in order for a claimant to be able to prove a disability under the statute.
The magistrate cannot make a proper determination of whether a claimant has proved a disability without becoming fully informed of all the relevant facts. The dissent asserts that our holding allowing discovery would deprive the magistrate of his discretion to allow discovery under MCL 418.851 and MCL 418.853. However, a magistrate’s discretion is no more absolute than it is in any other realm of judicial decision-making. In those cases in which a magistrate’s denial of discovery effectively deprives an employer of the right to present a meaningful defense, the magistrate, as a general matter, abuses his discretion.[6]
*295 The statute provides the magistrate with the authority and discretion to extract as much information from the parties as is necessary for the magistrate to make a proper determination in a case. A magistrate cannot make a proper determination without becoming fully informed of the facts regarding a claimant’s limitation in wage-earning capacity in work suitable to his qualifications and training. The disposition of a case on the basis of partial information might well under some *296 circumstances constitute an abuse of discretion, especially when, as here, the restriction on disclosure effectively relieves a claimant of the obligation to satisfy his burden of proof.
The employer has the right to present a meaningful defense. Yet, the dissent would deprive the employer of any right to discovery and, consequently, any practical way of sustaining its burden of production. How would the employer necessarily know what skills or training an employee had obtained in the course of his life that might be compatible with an employment position? How would the employer necessarily be apprised of the myriad factors that would facilitate or impede an employee’s ability to secure an equivalent position in the event of an injury?
The dissent again confidently asserts that the employer here possessed sufficient information, in the form of claimant’s employee file and transcripts from prior hearings, for its expert to conduct a transferable-skills analysis. How does the dissent know this? Certainly, this assertion is inconsistent with the magistrate’s assessment of the testimony that defendant’s vocational expert “would need to meet with plaintiff to perform a transferable job skill analysis.” Moreover, as the dissenting commissioner noted, plaintiff attended college on three separate occasions after he began his employment with defendant, and that this training, however limited, “would be relevant in determining if he had any post injury job qualifications and training ----”
Even more significantly, what are the standards for the dissent’s assertions? If there had been no prior proceedings, would the employer be limited to its personnel files? Must an employer maintain personnel files in specific anticipation of someday having to do a *297 wage-earning capacity analysis on an employee? How does an employer accurately establish wage-earning capacity without access to information from the best-informed person in the world concerning that subject: the claimant himself?
The dissent also alludes to the employer’s duty under MCL 418.319(1) to provide an injured employee with vocational rehabilitation services, but immediately takes issue with the employer’s right to interview the employee in this regard. Just as with the matter of discovery, it is unclear how the dissent would have the employer satisfy its obligation in this regard without affording it some means to access to necessary information. In both of these realms, the dissent prefers to deny the employer any ability to gather information necessary to defend itself.
V CONCLUSION
We reiterate that Sington overruled Haske and, therefore, that the procedures of the workers’ compensation process must reflect this change in the caselaw. The claimant bears the burden of proving a disability by a preponderance of the evidence under MCL 418.301(4), and the burden of persuasion never shifts to the employer. The claimant must show more than a mere inability to perform a previous job. Rather, to establish a disability, the claimant must prove a work-related injury and that such injury caused a reduction of his maximum wage-earning capacity in work suitable to the claimant’s qualifications and training. To establish the latter element, the claimant must follow these steps:
(1) The claimant must disclose all of his qualifications and training;
*298 (2) the claimant must consider other jobs that pay his maximum pre-injury wage to which the claimant’s qualifications and training translate;
(3) the claimant must show that the work-related injury prevents him from performing any of the jobs identified as within his qualifications and training; and
(4) if the claimant is capable of performing some or all of those jobs, the claimant must show that he cannot obtain any of those jobs.
If the claimant establishes all these factors, then he has made a prima facie showing of disability satisfying MCL 418.301(4), and the burden of producing competing evidence then shifts to the employer. The employer is entitled to discovery before the hearing to enable the employer to meet this production burden. While the precise sequence of the presentation of proofs is not rigid, all these steps must be followed.
In this case, claimant did not sustain his burden of proving a disability. The Court of Appeals erred in holding that claimant sustained his burden of proving that he was disabled from all jobs within his qualifications and training because the existence of other jobs within his qualifications and training paying the maximum wages was not apparent. The Court of Appeals also erred by holding that evidence concerning whether claimant has reasonable employment options available for avoiding a diminution in his wages in a position within his qualifications and training is not part of a claimant’s proofs, and further erred by effectively shifting the burden of proof to the employer to demonstrate that there are jobs available within the claimant’s qualifications and training. Finally, the Court of Appeals erred in holding that the magistrate did not abuse his discretion by denying the employer’s expert the opportunity to interview claimant before the hearing. *299 Given the inconsistent application of the Sington standard in the past, we believe that it would be equitable to allow claimant the opportunity to present his proofs with the guidance provided by this opinion. Accordingly, we reverse those portions of the Court of Appeals judgment and remand this matter to the magistrate for a new hearing consistent with the procedures set forth in this opinion.
Taylor, C.J., and Corrigan and Young, JJ., concurred with Markman, J.

 In Boggetta, supra at 603, this Court quoted with approval the opinion of the Workmen’s Compensation Appeal Board (WCAB), which stated that a hearing referee’s responsibility is “ ‘broad enough to require the answering of interrogatories requested by one of the parties if such answers are necessary to a proper inquiry into the facts.’ ”

 We do not address the issue of wage loss in this opinion, which, under MCL 418.301(4), is an issue entirely separate from the establishment of disability. Once a plaintiff makes a prima facie showing of disability, the plaintiff must also prove a wage loss. Sington, supra at 160 n 11.

 MCL 418.851 provides, in pertinent part, that “[t]he worker’s compensation magistrate at the hearing of the claim shall make such inquiries and investigations as he or she considers necessary.” MCL 418.853 allows the magistrate to “administer oaths, subpoena witness, and to examine [] parts of the books and records ...

 The procedures set forth in this opinion are more consistent with Sington than the procedures of the Court of Appeals, and Sington is more consistent with the statute than is Haske. Moreover, it must be said, although it does not influence this opinion, that the procedures set forth here will almost certainly lead to a far more efficient use of human and economic resources in Michigan than the procedures introduced by this Court in Haske. Injured employees who are able to continue to work will be encouraged to do so instead of having their skills wasted, workers’ compensation costs will be reduced for employers, and the competitiveness of Michigan as a workplace with other states will be enhanced. Not only does the dissent misconstrue these observations by ignoring our prefatory language, post at 319 and n 18, but one cannot help but glean from the dissent a sense that it is somehow better that a person who, while unable to perform Job A as a result of a workplace injury, could *289 perform Job B at an equivalent compensation should be encouraged not to do so, thereby imposing higher workers’ compensation costs on his employer. To what conceivable end?

 The dissent compares the general language of MCL 418.301(4) with the more specific language of MCL 418.385 to conclude that MCL 418.301(4) does not require affirmative proofs to demonstrate a limitation in wage-earning capacity. This conclusion is illogical. The Legislature used specific language in MCL 418.385 to require a claimant to submit to a medical examination. It does not follow that every other provision of the statute must use similarly specific language when more general language will suffice. In stating that the claimant must demonstrate a reduction in wage-earning capacity, MCL 418.301(4) is sufficiently clear in what it requires.

 The dissent asserts that under Boggetta, which stated that a hearing referee has the authority to require discovery, Boggetta, supra at 603-604, the employer does not have a right to discovery. However, if a magistrate has the discretion to order discovery, and such discovery is necessary for the employer in a particular case to sustain its burden of production, then the magistrate does abuse his discretion in failing to order discovery and denying the employer the opportunity to present a defense. The dissent also asserts that Boggetta is not applicable because the statute it relied on has been modified. Boggetta, supra at 602-603, quoted with approval the WCAB opinion, which first cited Rule 7 of the workmen’s compensation department’s rules of practice, 1954 Mich Admin Code, R 408.7: “ ‘At the hearing in any case, the hearing referee may call witnesses and order the production of books, records, including hospital records, accounts and papers which he deems necessary for the purpose of making an award.’ ” This language reflected the authority granted under the predecessor to *295 MCL 418.853, former MCL 413.3, which stated, in pertinent part: “The board or any member thereof shall have the power to administer oaths, subpoena witnesses and to examine such parts of the books and records of the parties to a proceeding as relate to questions in dispute.” The WCAB concluded that Rule 7 gave the hearing referee authority to carry out certain actions, but did not constitute an exhaustive list of what a hearing referee could do in workmen’s compensation proceedings. Boggetta, supra at 602. The WCAB then cited the predecessor to MCL 418.851, former MCL 413.8, which stated that a hearing referee “ ‘shall make such inquiries and investigations as it (he) shall deem necessary.’ ” Id. at 603. The WCAB concluded that the hearing referee’s responsibility was “ ‘broad enough to require the answering of interrogatories requested by one of the parties if such answers are necessary to a proper inquiry into the facts.’ ” Id. The “substantial alteration” in the statute that the dissent refers to, post at 311, is effectively that the language “at the hearing” was added in MCL 418.851. Applying Boggetta’s reasoning, this change would not alter the holding at all. These two provisions accord a magistrate the authority to require necessary discovery throughout the entire process of examining the case to render a proper decision regarding whether a claimant has proved a disability. They do not purport to constitute an exhaustive list of actions a magistrate may take. In addition, the WCAC, sitting en banc, addressed the meaning of this amendment in O’Brien, supra at 3, in which it held that the addition of this language was a result of statutory changes in 1985, in which the authority to assign cases was removed from the Bureau of Worker’s Disability Compensation and vested in the newly created Board of Magistrates. The language “The worker’s compensation magistrate at the hearing” was merely a replacement of the previous language, “The hearing referee assigned to any hearing.” Id. Therefore, the phrase “at the hearing” is a qualifier for the word “magistrate” and refers to the entire proceedings before the magistrate, and does not refer to only a portion of those proceedings.