# STATE OF MICHIGAN

# COURT OF APPEALS

VALERIE HAMMOND,

        Plaintiff-Appellant,

v

DEPARTMENT OF CORRECTIONS,

        Defendant-Appellee.

UNPUBLISHED
November 10, 2015

No. 322889
Michigan Compensation
Appellate Commission
LC No. 13-000060

Before: GADOLA, P.J., and HOEKSTRA and M. J. KELLY, JJ.

PER CURIAM.

This case arises out of plaintiff's effort to establish her eligibility for disability benefits under the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.* Plaintiff appeals by leave granted a decision of the Michigan Compensation Appellate Commission (MCAC), finding that she was not disabled as a result of her post-traumatic stress disorder (PTSD), which arose after a prison inmate viciously attacked plaintiff while she was working as a prison nurse. For the reasons below, we affirm.

## I. PROCEDURAL HISTORY

On February 3, 2007, plaintiff was working as a nurse at the Marquette Branch Prison when she was attacked by a prisoner while performing an examination. Corrections officers stopped the attack before plaintiff sustained serious physical injuries, but after the event, plaintiff began having severe panic attacks and stopped going to work. Plaintiff made one unsuccessful attempt to return to work on October 15, 2007, which ended when she became overwhelmed by anxiety. Plaintiff then filed an application for disability benefits, claiming she was unable to perform any work due to her PTSD. At a trial before a magistrate, plaintiff testified that as a result of the attack, she was hypervigilant and always afraid, particularly of men, isolated settings, and enclosed and cluttered rooms. Plaintiff said she could not work because she could not tolerate being around men, she had anxiety, and she lacked the ability to concentrate around activity. Plaintiff also reported additional symptoms including panic attacks, muscle tension, inappropriate guilt, and fear of being touched.

In support of her disability claim, plaintiff presented the deposition testimony of psychologist Ralph Ford III, Ed.D., who concluded that plaintiff suffered from severe and chronic PTSD as a result of the attack, which disabled her from working. Ford explained that

-1-

plaintiff's test results showed that she did not exaggerate her symptoms and that she experienced moderate to severe symptoms of anxiety, PTSD, depression, and substance abuse. Plaintiff also offered the deposition testimony of Samuel George Field, M.A., who was plaintiff's therapist before and after the attack. Field believed that plaintiff was unable to manage her symptoms of PTSD and would never be able to deal with men in isolated settings. He further opined that plaintiff was unable to manage the social aspects of a typical nursing job, including concentrating for lengthy periods of time and assisting male patients. Field testified that plaintiff was totally disabled by her PTSD.

In opposition, defendant offered the testimony of psychiatrist Richard S. Jackson, M.D., who concluded that plaintiff was not disabled by PTSD. Although Jackson agreed that plaintiff should not initially work around inmates or in isolated settings due to her anxiety, he believed she could work without restrictions in the general field of nursing. Jackson opined that plaintiff was not motivated to return to work because of her preexisting mental health and substance abuse issues and her enjoyment of time off work. Psychologist Manfred F. Greiffenstein, Ph.D., also testified on defendant's behalf. He believed that plaintiff's PTSD had resolved, but she suffered from a preexisting anxiety disorder. According to Greiffenstein, plaintiff could return to work as a nurse, but she should avoid isolated areas and contact with prisoners for a time. Greiffenstein believed plaintiff had developed a sense of entitlement, thought she deserved disability benefits, and resented expectations that she return to work. After reviewing the records of plaintiff's treatment with Field, Greiffenstein concluded that plaintiff was misattributing her symptoms to PTSD.

The magistrate found that plaintiff was totally disabled as a result of her PTSD arising from the attack. Defendant appealed the magistrate's decision to the MCAC, arguing that plaintiff failed to present sufficient disability proofs under *Stokes v Chrysler LLC*, 481 Mich 266; 750 NW2d 129 (2008), because she did not identify what jobs she was suited for based on her qualifications and training, and made no effort to seek post-injury employment. The MCAC vacated the magistrate's decision and remanded for further proceedings, stating the following:

> We vacate the magistrate's finding of disability, except as to his finding that plaintiff met step one of *Stokes*, a finding uncontested by defendant. The matter is remanded to the Board to consider anew the proofs **as they exist** with respect to disability. If the Board on remand is persuaded that this record as a whole evidences total disability by a preponderance, it must explain the path it takes through the conflicting record evidence, the evidence adopted and why, to arrive at that conclusion. . . . The same is true if the Board should find that the record evidences either partial disability or that the record fails to persuade as to disability. This analysis shall be performed based upon the record as it stands and against the background of . . . having found the plaintiff to be a "very credible witness." [*Hammond v Mich Dep't of Corrections*, 2013 Mich ACO 40, p 7.]

On remand, for reasons unrelated to the action itself, the case was assigned to a new magistrate. After evaluating all of the record evidence, the magistrate concluded as follows:

> [B]oth doctors [testifying on behalf of the defense] opine that [plaintiff] was capable of returning to work in a nursing capacity but did impose restrictions

regarding her actual working for the Department of Corrections. I find these doctors['] testimony to be persuasive. Both doctors acknowledged a diagnosis of post-traumatic stress disorder originating from the work event. . . . Based on the totality of the medical [evidence] I did not find the testimony of [Ford and Field] to be persuasive. I thought both witnesses were overstating her current disability. Whereas both [Jackson and Greiffenstein] agreed with the diagnosis of posttraumatic stress related to her employment, but found that she was capable of working in a different setting as a nurse. Therefore I find that she is not totally disabled or so severely impaired that she cannot do any work.

The magistrate further determined that plaintiff failed to establish any form of disability under *Stokes*, 481 Mich 266, because she admitted that she had not looked for alternative work since the attack. The magistrate concluded that although plaintiff was entitled to reasonable medical benefits related to her work injury, she was not entitled to wage loss benefits after her failed attempt to return to work on October 15, 2007.

The MCAC affirmed the magistrate's opinion, finding that she adequately explained her resolution of conflicting evidence and "expressed reasonable choices based upon competent, material, and substantial evidence on this record as a whole." *Hammond v Mich Dep't of Corrections*, 2014 Mich ACO 25, p 4. Plaintiff then filed an application for leave to appeal in this Court. On January 26, 2015, this Court granted leave on the limited issues of (1) "whether the MCAC correctly determined whether the magistrate followed its directive to consider plaintiff a 'very credible witness,' " and (2) "whether plaintiff failed to satisfy the necessary criteria from [*Stokes*, 481 Mich 266], for obtaining benefits." *Hammond v Dep't of Corrections*, unpublished order of the Court of Appeals, entered January 26, 2015 (Docket No. 322889).

## II. STANDARD OF REVIEW

Our review of a decision issued by the MCAC is limited. *Rakestraw v Gen Dynamics Land Sys, Inc*, 469 Mich 220, 224; 666 NW2d 199 (2003). We will not independently review the magistrate's factual findings, but rather consider only the findings of the MCAC. *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 702; 614 NW2d 607 (2000). In the absence of fraud, we consider the MCAC's factual findings conclusive if they are supported by any competent evidence in the record. *Rakestraw*, 469 Mich at 224. We review de novo questions of law pertaining to an order issued by the MCAC. *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401; 605 NW2d 300 (2000). Generally, this Court will only reverse a decision of the MCAC if it is based on an improper legal framework or erroneous legal reasoning. *Id.* at 401-402.

## III. DISCUSSION

A claimant bears the burden of establishing a disability and entitlement to benefits and compensation under the WDCA by a preponderance of the evidence. MCL 418.851. The WDCA defines "disability" as "a limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work-related disease." MCL 418.301(4)(a). In *Stokes*, 481 Mich at 297, our Supreme Court explained that to establish a disability under MCL 418.301(4)(a), "the claimant must prove a work-related injury *and* that such injury caused a reduction of his maximum wage-earning capacity in work suitable

-3-

to the claimant's qualifications and training." To prove a reduction in wage-earning capacity, generally, a plaintiff must (1) disclose his or her qualifications and training, (2) identify what jobs he or she is qualified and trained to perform within the same maximum pre-injury salary range, (3) show that the work-related injury prevents him or her from performing any of the identified jobs, and (4) if the plaintiff is capable of performing some of the identified jobs, show that he or she cannot obtain those jobs. *Id.* at 297-298. If the plaintiff establishes a prima facie showing of disability, the burden shifts to the employer to refute the claim. *Id.* at 283.

Plaintiff first argues that the MCAC's finding that she was not incapable of any work was inconsistent with its previous finding that she was a "very credible witness." Plaintiff contends that if the MCAC properly considered her testimony as being credible, it would have accepted Field's and Ford's testimony and concluded that she was totally disabled. We disagree.

Below, the magistrate concluded that plaintiff was not totally disabled on the basis of Jackson's and Greiffenstein's testimony regarding the severity and existence of plaintiff's PTSD, not because it determined plaintiff's testimony was incredible. Stated another way, plaintiff provided credible testimony about the nature of her symptoms, but the witnesses interpreted her symptoms differently to reach their conclusions regarding the severity of her PTSD. The MCAC affirmed the magistrate's finding that plaintiff's witnesses overstated the extent of her disability. This finding did not call into question the credibility of plaintiff's testimony about her symptoms. Rather, the magistrate chose between conflicting testimony regarding what plaintiff's symptoms revealed about the nature and severity of her PTSD to conclude that she was not totally disabled.

Indeed, defendant's witnesses took plaintiff's description of her symptoms into account before providing their opinions regarding her mental status and ability to work. Accepting plaintiff's description of her symptoms as true, Jackson recommended that plaintiff continue in therapy, but stated that he did not believe her PTSD was so severe that she could not work as a nurse in most settings. Additionally, Greiffenstein acknowledged plaintiff's description of her symptoms, but did not attribute those symptoms to PTSD resulting from the attack. The MCAC's opinion properly distinguished between accepting plaintiff's testimony as honest and accepting her and her witnesses' interpretation of the symptoms as revealing severe and chronic PTSD that prevented plaintiff from performing any work. Accordingly, the MCAC's finding that plaintiff was capable of working as a nurse in most settings, and therefore was not totally disabled, was supported by competent evidence in the record.

Plaintiff also failed to establish that she was disabled under the standard set forth in *Stokes*, 481 Mich 266. Plaintiff did not introduce any evidence identifying what jobs she was qualified and trained to perform and she admitted that she did not look for any alternative post-injury employment. Because she did not offer any proof of the available jobs she was qualified and trained to perform, plaintiff failed in her burden to establish a loss of wage-earning capacity. *Id.* at 297. The ability (or lack thereof) to perform work in light of a work-related injury can only be judged against the range of available employment opportunities. By failing to delineate those opportunities, plaintiff made it impossible to determine whether or not she had the capacity to perform in an alternative employment setting.

Plaintiff argues that she was not required to seek alternative employment because she believed she was totally disabled and incapable of any work. As discussed above, the MCAC's finding to the contrary was supported by competent evidence in the record. Although "a claimant may choose whatever method he sees fit to prove an entitlement to workers' compensation benefits," *Stokes*, 481 Mich at 282, there is no exemption based on a good-faith belief of total disability. While plaintiff put forward testimony to support her claim of total disability, defendant countered that testimony with its own expert witnesses. The magistrate, and the MCAC, credited defendant's witnesses over plaintiff's. Plaintiff has not shown that the MCAC operated within the wrong legal framework or based its decision on erroneous legal reasoning. Therefore, we will not disturb the MCAC's conclusion that plaintiff was not disabled.

Affirmed.

/s/ Michael F. Gadola
/s/ Joel P. Hoekstra
/s/ Michael J. Kelly

-5-