*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AHMED OMER,

Plaintiff-Appellant,

v

STEEL TECHNOLOGIES, INC.,
and NEW HAMPSHIRE INSURANCE CO.,

Defendants-Appellees,

FOR PUBLICATION
April 16, 2020

No. 344310
MCAC
LC No. 14-000013

Before: O'BRIEN, P.J., and JANSEN and GLEICHER, JJ.

O'BRIEN, P.J. (*concurring*)

To be entitled to compensation under the workers' compensation act, a claimant must (1) establish a prima facie case of "disability" using the factors from *Stokes v Chrysler LLC*, 481 Mich 266, 282-283; 750 NW2d 129 (2008), and (2) prove a wage loss, see *id*. at 275 n 2. Once the claimant establishes that he or she is entitled to compensation, the amount of that compensation depends on whether the claimant establishes "total disability" or "partial disability."

The majority reads the MCAC's ruling as deciding that plaintiff, Ahmed Omer, failed to establish a prima facie case of disability, whereas I read the MCAC's ruling as deciding that Omer failed to establish "total disability." While I part ways with the majority on what the MCAC ruled, I nevertheless agree that the majority's ultimate conclusion that the MCAC's ruling should be reversed.

## I. STATUTORY FRAMEWORK

To illustrate the difference between "disability" and "total disability" under the workers' compensation act, it is helpful to walk through the act's statutory framework. Under MCL 418.301(1), "An employee, who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury, shall be paid compensation as provided in this act." But proving a work-injury is not, by itself, enough to receive compensation under the act; "that injury must result in a reduction of the claimant's wage-earning capacity in work suitable to his qualifications and training." *Stokes*, 481 Mich at 281. If this is established, the claimant has established a "disability" under the act. MCL 418.301(4)(a)

states in part, " 'Disability' means a limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work-related disease." MCL 418.301(4)(a) goes on to explain, "A limitation of wage earning capacity occurs only if a personal injury covered under this act results in the employee's being unable to perform all jobs paying the maximum wages in work suitable to that employee's qualifications and training, which includes work that may be performed using the employee's transferable work skills."

This is where the test from *Stokes* becomes applicable. *Stokes* provides a four-part test for establishing disability:

> First, the injured claimant must disclose his qualifications and training. . . .
>
> Second, the claimant must then prove what jobs, if any, he is qualified and trained to perform within the same salary range as his maximum earning capacity at the time of the injury. . . .
>
> Third, the claimant must show that his work-related injury prevents him from performing some or all of the jobs identified as within his qualifications and training that pay his maximum wages.
>
> Fourth, if the claimant is capable of performing any of the jobs identified, the claimant must show that he cannot obtain any of these jobs. [*Stokes*, 481 Mich at 282-283.[1]]

*Stokes* states, "Upon completion of these four steps, the claimant establishes a prima facie case of disability." *Id*. at 283.

The majority focuses on whether the testimony of a medical doctor—here, Dr. Nabil Suliman—can be used to establish a prima facie case of disability. I agree with the majority that a medical doctor's testimony can be used to establish disability, and I further agree that the evidence Omer presented established a disability.[2]

But establishing a disability does not, without more, entitle a claimant to compensation. "Once a plaintiff makes a prima facie showing of disability, the plaintiff must also prove a wage loss." *Id*. at 275 n 2. MCL 418.301(4)(a) states, "The establishment of disability does not create a presumption of wage loss." Defendants do not argue that Omer failed to establish wage loss, so I presume that defendants do not contest that it was established.

---

[1] This four-part test was incorporated into MCL 418.301(5).

[2] Once a claimant establishes a prima facie case of disability, a defendant can rebut that showing. See *Stokes*, 481 Mich at 283-284; MCL 418.301(6). Defendants here did not rebut Omer's evidence, so Omer's establishing a prime facie case of disability established disability.

-2-

This still does not end the inquiry; there remains the question of what compensation Omer is entitled to. This in turn depends on whether the claimant's disability is total or partial.[3] See *Cain v Waste Mgt, Inc*, 465 Mich 509, 511; 638 NW2d 98 (2002) (explaining that once a disabled claimant establishes entitlement to compensation under the act, "one must then determine if the disability is total or partial"). MCL 418.301(4)(a) states:

> A disability is total if the employee is unable to earn in any job paying maximum wages in work suitable to the employee's qualifications and training. A disability is partial if the employee retains a wage earning capacity at a pay level less than his or her maximum wages in work suitable to his or her qualifications and training.

"Total disability arises . . . when an employee proves that he is unable to perform all work suitable to his qualifications and training as a result of his injury." *Haske v Transp Leasing, Inc, Indiana*, 455 Mich 628, 655; 566 NW2d 896 (1997), overruled on other grounds by *Singleton*, 467 Mich at 172[4]; see also *Irvan v Borman's, Inc*, 412 Mich 496, 503; 315 NW2d 521 (1982) (explaining that a totally disabled claimant would have "no earning capacity").

I read the MCAC's decision as ruling that Omer's evidence could not establish "total disability." It stated, "[W]here a magistrate's finding of total disability is based upon a physician's conclusory declarations of total disability, rather than quantifications of limitations, described through physical restrictions, which may lead to wage loss, that finding is unsupported by competent evidence." I think the question we must address on appeal is whether Omer established "total disability," not whether Omer established "disability."[5]

---

[3] If the claimant establishes "total disability," he or she is entitled to "weekly compensation equal to 80% of [his or her] after-tax average weekly wage[.]" MCL 418.301(7). If the claimant establishes "partial disability," he or she is entitled to "weekly compensation equal to 80% of the difference between [his or her] after-tax average weekly wage before the personal injury and [his or her] wage earning capacity after the personal injury[.]" MCL 418.301(8).

[4] *Singleton* overruled "the *Haske* definition of disability," *Singleton*, 467 Mich at 146, but a fair reading of *Singleton* makes clear that it did not overrule *Haske*'s single line about "total disability."

[5] This distinction is important because some of the evidence that established Omer's prima facie case of disability does not establish that he was totally disabled. To prove that he was totally disabled, Omer had to established that he was unable to perform *any* job for which he was qualified because of his work-related injury. *Haske*, 455 Mich at 655. But to prove disability, Omer only needed to establish that he had a work-related injury that resulted "in a reduction of [his] wage-earning capacity in work suitable to his qualifications and training." *Stokes*, 481 Mich at 281. Omer's vocational expert, Barbara Feldman, only testified about disability; she testified that, given Omer's restrictions, "he would not be capable of returning to a job at which he earned his highest wage," and that "she was not able to find a job that pays plaintiff's maximum pre-injury rate of pay." Her testimony would not prove that Omer was totally disabled, and is therefore not relevant to the issue that I believe we should address on appeal.

## II. EVIDENCE OF "TOTAL DISABILITY"

To be exact, the question we should address on appeal is whether the magistrate's decision that Omer was totally disabled was supported by substantial, material, and competent evidence. The only evidence of total disability was (1) Dr. Suliman's testimony that Omer was "totally disabled," and (2) Omer's testimony that "he did not believe he was able to go back and do any job because he was in too much pain" and "he could sit for only 20 to 30 minutes at a time."

The MCAC ruled that Dr. Suliman's testimony that Omer was "totally disabled" was not "competent" evidence to support a finding of total disability. I do not disagree with that ruling.

I do not read the MCAC as ruling that a doctor can *never* testify about whether a claimant is totally disabled. As the MCAC recognized, a doctor who treats a claimant will be able to discuss a claimant's restrictions or physical limitations as a result of an injury. It follows that if a claimant's injury is so severe that the restrictions are that he or she cannot return to any employment, then the doctor's testimony could establish total disability.

But Dr. Suliman did not testify that Omer's injury was so severe that he could not work. Rather, Dr. Suliman testified that Omer was restricted to no excessive bending or twisting, and no lifting more than 20 pounds. Barbara Feldman, Omer's vocational expert, testified that this allowed Omer to perform sedentary work. Yet Dr. Suliman described Omer as "totally disabled."

Assuming that Dr. Suliman used "totally disabled" to be synonymous with "total disability," it is unclear how Dr. Suliman could make that assessment. "Total disability" is when a claimant "is unable to perform all work suitable to his qualifications and training as a result of his injury." *Haske*, 455 Mich at 655. For a doctor to testify that a claimant with restrictions other than being unable to return to any employment is "totally disabled," he or she would have to know the claimant's qualifications and training, and all work that the claimant could perform with his or her qualifications and training. Otherwise, the doctor could not know whether the claimant's restrictions or physical limitations prevented the claimant from "perform[ing] all work suitable to his qualifications and training . . . ." *Id.* That is, the doctor would not have sufficient knowledge to offer an opinion on whether the claimant was "totally disabled." See MRE 702.

It was never established that Dr. Suliman knew Omer's qualifications and training, or that he knew all work that Omer could perform with his qualifications and training. Without that knowledge, Dr. Suliman's testimony that Omer was "totally disabled" had no probative value for establishing total disability; it was a conclusory statement that did not tend to prove that Omer was "unable to perform all work suitable to his qualifications and training as a result of his injury." *Haske*, 455 Mich at 655. I would therefore conclude that the MCAC was correct in deciding that Dr. Suliman's testimony did not support a finding of total disability.

But Dr. Suliman's testimony was not the only evidence establishing total disability. Omer testified that he did not think he could do any job because he was in too much pain. This testimony supports a finding of total disability. Of course, a magistrate can choose to not credit a claimant's testimony that he or she could not do any work because of a work-related injury, but the magistrate here chose to credit Omer's testimony. Given the substantial-evidence test's low bar, Omer's testimony was sufficient to support the magistrate's finding of total disability. I therefore agree

with the majority's conclusion that the MCAC misapplied the substantial-evidence test, and that we must reverse.

### III. MCAC'S ALTERNATIVE BASIS

As for the alternative ground that the MCAC reversed the magistrate on, I think that was error as well. The MCAC stated:

> It is the plaintiff who must demonstrate not only the existence of a disability, but its extent. The magistrate finds a lack of evidence as to whether plaintiff could find, secure and perform jobs paying less than his maximum wage as a failure of proofs by the defendant and so awards reduced wage loss benefits. It is true that the record reveals that plaintiff's vocational expert performed no labor market survey that would gauge the existence and availability of such jobs. It is also true that the record reflects the plaintiff did not look for work of any kind himself. But these deficiencies are failures by the plaintiff to undertake his burden to quantify the claimed work-related limitation in wage earning capacity. To the extent that this lack of evidence bears upon quantifying the appropriate weekly wage loss benefit to award, they indicate plaintiff has failed to sustain his burden of proving any entitlement to such a benefit.

The MCAC appears to have taken issue with the following portion of the magistrate's opinion:

> **Partial Wage Earning Capacity**
>
> There was no testimony from either of the vocational experts that plaintiff was capable of performing any jobs within the Concentra restrictions issued on March 10, 2011 which were the only restrictions applicable during the relevant period.

I understand the MCAC's concern. "MCL 418.851 places the burden of proof on the claimant to demonstrate his entitlement to compensation and benefits by a preponderance of the evidence." *Stokes*, 481 Mich at 285. To establish how much compensation he was entitled to, Omer had to establish by a preponderance of the evidence that he was either totally disabled or partially disabled. Total disability is when a claimant is unable to perform *any* job for which he or she is qualified because of a work-related injury, and partial disability is when a claimant establishes disability less than "total." They are mutually exclusive; to prove total disability requires a claimant to disprove partial disability. I read the MCAC's opinion as being concerned that the magistrate found that no evidence of partial disability was evidence of total disability, which would be incorrect. No evidence of partial disability is *not* evidence of total disability; it is a failure of the claimant to carry his or her burden of proof.

But there *was* evidence of total disability: Omer's testimony. His testimony that he was unable to do any work, which the magistrate credited, was sufficient to establish that he was totally disabled. Thus, the MCAC's alternative basis for reversing the magistrate was also incorrect.

For these reasons, I concur with the majority's decision to reverse the MCAC and reinstate the magistrate's decision.


/s/ Colleen A. O'Brien