WALKER *v.* LoSELLE CONSTRUCTION CO.    .

1. WORKMEN'S COMPENSATION—OCCUPATIONAL DISEASES—MEDICAL
   COMMISSION—DATE OF DISABLEMENT—LIABILITY OF .EMPLOYER.
      The report of a medical commission appointed by the depart-
      ment of labor and industry under the occupational disease
      amendment to the workmen's compensation act is final only
      as to the condition of the employee on the date of the exam-
      ination, but the liability of the employer is to be determined
      by the department as of the date of the disablement of the
      employee (Act No. 10, pt. 7, §§ 2, 6, Pub. Acts 1912 [1st Ex.
      Sess.], as added by Act No. 61, Pub. Acts 1937).
2. SAME—CEMENT WORKER—REPORT OF MEDICAL COMMISSION—
   FINDING OF DEPARTMENT.
      Where employee who had been engaged in removing bulk cement
      from box cars for about two months was obliged to stop such
      work in September, 1940, due to skin trouble, was examined
      by medical commission in following July and found to have
      been suffering from noncompensable dermatitis herpetiformis,
      department in October, 1941, accepted the medical commis-
      sion's report as final and conclusive without determining
      whether or not the employee had suffered a compensable oc-
      cupational disease before or after examination by medical
      commission and did not make a finding as to whether em-
      ployee's condition before and subsequent to the examination
      was the same or different from condition at the time it was
      made, although there was testimony by physicians that before
      and after the examination plaintiff had had dermatitis vene-
      nata, a compensable disease, case is remanded for determina-
      tion of such questions (Act No. 10, pt. 7, §§ 1, 2, 6, 7, Pub.
      Acts 1912 [1st Ex. Sess.], as added by Act No. 61, Pub.
      Acts 1937).

   NORTH, WIEST, and BUTZEL, JJ., dissenting.

Appeal from Department of Labor and Industry.
Submitted January 19, 1943. (Docket No. 54, Calen-

dar No. 42,202.)   Decided April 6, 1943.   Rehearing denied June 7, 1943.

Theodore Walker presented his claim for compensation for an occupational disease against LoSelle Construction Company, employer, and Liberty Mutual Insurance Company, insurer. Award to defendants. Plaintiff appeals. Reversed and remanded.

*William R. Barber,* for plaintiff.

*Alexander, McCaslin & Cholette,* for defendants.

STARR, J.   Plaintiff appeals from an order of the department of labor and industry which affirmed the deputy commissioner's award denying plaintiff compensation for an alleged occupational disease.

On July 6, 1940, plaintiff, about 26 years old, was employed by defendant LoSelle Construction Company in the removal of bulk cement from box cars. He wore a mask to keep the cement dust out of his eyes, nose, and mouth. As the weather was hot, he perspired freely, and his body would become covered with cement dust. After working for about five weeks, plaintiff noticed a breaking out on the skin of his forearms and neck, which spread over his body. He described it as being ''like pimples, and would run water.   *   *   *   It itched and burned.'' His condition became worse, and he was obliged to quit work about September 8, 1940. He reported his condition to the superintendent of the LoSelle company and demanded compensation. The superintendent and also representatives of defendant insurance company told him to go to a doctor.

Plaintiff was examined and treated by several doctors who diagnosed his condition as cement dermatitis, also known as dermatitis venenata. He improved somewhat under medical care, but when he

perspired, the breaking-out condition on the skin of his body and legs returned, causing severe itching and burning.. He worked at odd jobs on his father's farm and at a roadside restaurant and also several weeks at carpenter work for his brother. However, he was unable to do any work which caused him to perspire.

Plaintiff filed application for adjustment of claim under the occupational disease amendment (Act No. 61, Pub. Acts 1937 [Comp. Laws Supp. 1940, § 8485-1 *et seq.*, Stat. Ann. 1942 Cum. Supp. § 17.220 *et seq.*]) to the compensation law (Act No. 10, Pub. Acts 1912 [1st Ex. Sess.], as amended [2 Comp. Laws 1929, § 8407 *et seq.* (Stat. Ann. § 17.141 *et seq.*)]). In his application plaintiff alleged that he was suffering from dermatitis venenata, a disease resulting from the nature of his employment by defendant LoSelle Company. Dermatitis venenata is scheduled as an occupational disease by section 2 of the occupational disease amendment (Act No. 61, Pub. Acts 1937), which provides:

"27. Dermatitis (venenata)—Any process involving the use of or direct contact with acids, alkalies, acids or oil, or with brick, cement, lime, concrete, or mortar capable of causing dermatitis (venenata)."

Defendants filed answer, denying that plaintiff "was injured, or contracted any occupational disease, as arising out of and in the course of his employment." In pursuance of section 6 of the occupational disease amendment, the department of labor and industry appointed a medical commission consisting of three doctors who examined plaintiff July 16, 1941. The two reports filed by such medical commission stated, in substance, that plaintiff was not suffering from dermatitis venenata but that he had dermatitis herpetiformis, known as papular Duhring's disease. The latter disease (dermatitis

herpetiformis) is not compensable under the occupational disease amendment. '

On October 10, 1941, the matter was heard before a deputy commissioner whose award denying plaintiff compensation stated, in part, that "plaintiff is not suffering from dermatitis venenata.   *   *   * Compensation should be and hereby is denied."

On review the department affirmed the deputy's award which denied plaintiff compensation.   The opinion of the department filed September 1, 1942, stated, in part:

"It was the finding of that (medical) commission that the plaintiff, at the time he was examined (July 16, 1941), was not suffering from dermatitis venenata.   *   *   *   This report of the medical commission is final and conclusive in the instant case."

Having obtained leave, plaintiff appeals from the order of the department affirming the deputy's award.   Plaintiff contends that the department erred in finding, as a matter of law, that the report of the medical commission was "final and conclusive in the instant case."   Defendants contend that plaintiff was suffering from one and the same disease or condition from September 8, 1940, when he was obliged to quit work, until the hearing October 10, 1941, and that the report of the medical commission, who examined him July 16, 1941, is final and conclusive.

Plaintiff testified that he had no skin disease prior to his employment by the LoSelle company.   A doctor who examined plaintiff in September, 1940, and who treated him for several months thereafter, diagnosed plaintiff's condition as cement dermatitis. Another doctor, who examined plaintiff about September 10, 1940, who also treated him for several months, and who again examined him prior to the hearing on October 10, 1941, diagnosed plaintiff's

condition as "contact dermatitis, due to cement," which is a form of dermatitis venenata. He testified further:

"*Q.* In your opinion, does dermatitis venenata, caused from cement, affect the skin to make it more susceptible for other skin diseases?

"*A.* In my opinion, a severe injury to the skin, as likely to be caused by cement dermatitis, will leave the skin in a sort of hypersensitive condition, so that a further injury to the skin in the form of external agents, is liable to produce more trouble, more lacerations.   *   *   *

"*Q.* Your diagnosis on September 10th was dermatitis, contact dermatitis from cement, is that right?

"*A.* Yes, sir.

"*Q.* And was that your diagnosis when you examined him yesterday?

"*A.* Yes, sir.   *   *   *

"*Q.* He has, when you examined him yesterday, the same disease that he had on September 10, 1940, is that right?

"*A.* Yes, sir.   *   *   *

"*Q.* Then his capacity to work would be within that labor that did not create sweating?

"*A.* I would say that would be a big consideration."

A doctor specialized in the field of dermatology testified that he examined plaintiff in December, 1940, and diagnosed his affliction as dermatitis venenata, also known as contact dermatitis. He also testified:

"*Q.* Is dermatitis from cement apt to remain chronic after leaving cement?

"*A.* In some cases, yes.

"*Q.* In this case what would you say?

"*A.* Well, the facts speak for themselves in this case.   *   *   *

"*Q.* In your opinion, what caused this dermatitis in Mr. Walker's case?

"*A.* It is my opinion that it is cement.   *   *   *

"*Q.* When did you see the plaintiff last?   *   *   *

"*A.* I saw him yesterday.

"*Q.* Did you make any tests?

"*A.* Yes. Yesterday I put a sample of dry cement on his skin and also a sample of cement wetted with water, and those tests were left on a period of about 14 hours. The arm, the one where the cement had been wetted, caused an irritation of the skin similar to the eruptions the patient has at this time. The dry cement did not.   *   *   *

"*Q.* Is it your opinion that this man has suffered from cement dermatitis, so-called, or contact dermatitis, caused by cement since September 10, 1940, to the present time?

"*A.* In my opinion, yes. Possibly aggravated by other things after that.

"*Q.* Do you believe he now suffers from cement dermatitis?

"*A.* He suffers from the chronic results of cement dermatitis.   *   *   *

"*Q.* Do you believe this man is disabled?

"*A.* I believe so far as working around cement and caustics or alkalies he is disabled."

In summary, the record shows plaintiff was obliged to quit work September 8, 1940; that three doctors who examined him diagnosed his condition as cement dermatitis, also known as dermatitis venenata, which is a compensable occupational disease; that, according to the medical testimony, he continued to suffer from such disease and was still afflicted at the time of the hearing October 10, 1941; that he was unable to do any work which caused him to perspire; and that he was disabled from earning full wages at the work at which he was last employed by defendant LoSelle company. The medi-

cal commission examined him July 16, 1941, and reported that he was not suffering from the form of dermatitis classified as dermatitis venenata.

The question presented on this appeal is whether or not the medical commission's report was, as a matter of law, "final and conclusive" as to plaintiff's condition during the full period from September 8, 1940, to the time of hearing on October 10, 1941. Section 6 of the occupational disease amendment (Act No. 61, Pub. Acts 1937) provides:

"In case the employee is alleged to be suffering from an occupational disease and there shall be a dispute with respect thereto, the said board,* or any member thereof, shall appoint a commission of three qualified impartial physicians to examine the injured employee and to report. The report, when signed by at least two of the members of said commission, shall be final and conclusive as to the condition of said employee with respect to the alleged disease or diseases."

Section 1 of the occupational disease amendment provides:

"(a) The word 'disability' means the state of being disabled from earning full wages at the work at which the employee was last employed;     *     *     *

"(c) The term 'occupational disease' means a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment."

In *Smith* v. *Wilson Foundry & Machine Co.*, 296 Mich. 484, we determined that the report of the medical commission was final and conclusive *only* as to

---

* The powers and duties of the industrial accident board, here referred to, have been transferred to the department of labor and industry and the board abolished. See 2 Comp. Laws 1929, § 8312 (Stat. Ann. § 17.3).—REPORTER.

the date it examined the employee. In that case we said (pp. 489–490):

"Under section 6 of part 7 of the above law, the report of the medical commission 'shall be final and conclusive as to the condition of said employee with respect to the alleged disease or diseases.'

"It appears from the above section of the act that the *medical commission is limited and may determine only the condition of the injured employee on the date that he appears before it for examination. Its report is final only as to the date of the examination, but the liability of the employer is to be determined as of the date of the disablement of the employee. Ruffertshafer v. Robert Gage Coal Co., 291 Mich. 254.* * * *

"Under the theory advanced by defendant company, an injured employee cannot have a determination of the period of his disability if the medical commission subsequently finds that he is not suffering from an occupational disease.

"We are not in accord with such a theory. It deprives an injured employee of his rights defined in section 7 of part 7 of the act and in our holding in *Ruffertshafer v. Robert Gage Coal Co., supra.*"

See, also, *Flanigan v. Reo Motors, Inc.,* 300 Mich. 359; *Nicholas v. St. Johns Table Co.,* 302 Mich. 503.

Under the rule established in *Smith v. Wilson Foundry & Machine Co., supra,* the report of the medical commission in the present case was final and conclusive *only* as to plaintiff's condition when the commission examined him on July 16, 1941. The department erred in determining, in effect, that the report of the medical commission was, as a matter of law, final and conclusive as to plaintiff's condition during the entire period from September 8, 1940, to October 10, 1941.

The department made no finding of fact as to whether or not plaintiff was disabled by a compen-

sable disease at any time before or subsequent to his examination by the medical commission on July 16, 1941. Neither did the department make a finding as to whether plaintiff's condition before and subsequent to his examination by the medical commission was the same or different from his condition at the time of such examination.

We are obliged to remand this case to the department for determination of the question of fact as to whether or not, at any time before or subsequent to his examination by the medical commission, plaintiff was disabled by a compensable occupational disease resulting from the nature of his work, and, if so disabled, for determination of the date thereof in accordance with section 7 of the occupational disease amendment.

The department's order of September 1, 1942, is vacated and set aside, and the case is remanded to the department for further action in accordance with this opinion. Plaintiff shall recover costs.

BOYLES, C. J., and CHANDLER, BUSHNELL, and SHARPE, JJ., concurred with STARR, J.

WIEST, J. (*dissenting*). I do not concur. The question before the compensation commission was whether plaintiff had, at the time of the hearing, dermatitis venenata, an occupational disease. His doctors advised him that he had. This was disputed and brought the question before the department. The department empowered by statute (section 6 of the occupational disease amendment [Act No. 10, part 7, § 6, Pub. Acts 1912 (1st Ex. Sess.), as added by Act No. 61, Pub. Acts 1937 (Comp. Laws Supp. 1940, § 8485-6, Stat. Ann. 1942 Cum. Supp. § 17.225)]) to do so, appointed disinterested physicians to examine plaintiff; they did so and found

he did not have dermatitis venenata, the claimed occupational disease, as he and his physicians claimed, but had dermatitis herpetiformis; which is a noncompensable disease. Thereupon, as directed by statute, the department denied compensation.

My Brother reverses the award on the ground that we have held the report of the physicians appointed by the department speaks only as of the day it is made and, therefore, remanded "this case to the department for determination of the question of fact as to whether or not, at any time before or subsequent to his examination by the medical commission, plaintiff was disabled by a compensable occupational disease resulting from the nature of his work, and, if so disabled, for determination of the date thereof in accordance with section 7 of the occupational disease amendment."

The only disability plaintiff and his physicians claimed was the occupational disease known as dermatitis venenata and if he did not have that disease he made no case. I am aware of our holdings that the report of the medical commission speaks only as of the time it is made but, in the case at bar, that was the only occasion for it to speak because if the plaintiff did not have the occupational disease he and his physicians claimed at that time he could have no award. The disease the physicians found was of internal origin, while the disease plaintiff claimed was of external contraction.

If the statute relative to the appointment of a medical commission is good, and my Brother says it is and I agree that it is, this case ended when the department accepted the report as final as directed by the statute. We have here a case where plaintiff claims an occupational disease and the department having a medical question before it had a right, and could exercise it, of designating a medical commission to settle the question as was done in this case.

The award of the department should be affirmed, with costs against plaintiff.

BUTZEL, J., concurred with WIEST, J.

NORTH, J. (*dissenting*). I concur in affirmance because there is testimony that throughout the whole period involved plaintiff was afflicted with the *same* disease, which the medical commission found was dermatitis herpetiformis, a noncompensable disease. This testimony supports the department's determination of the controlling issue of fact and its denial of compensation should be affirmed.

BUTZEL, J., concurred with NORTH, J.