BERGER v GENERAL MOTORS CORPORATION

Docket No. 91017. Submitted August 13, 1986, at Lansing. Decided
April 7, 1987.

Raymond C. Berger, an employee of General Motors Corporation,
was awarded workers' compensation benefits for an alleged
disabling condition caused by constant repetitive use of his
hands in gripping rails at work. The Workers' Compensation
Appeal Board reversed the award of benefits in a two-to-one
decision, the majority indicating that in the absence of medical
depositions all that was offered to show that the condition was
work related was Berger's own testimony. The dissenting mem-
ber of the appeal board would have affirmed on the basis of
statements made by Berger's family physician in a medical
evaluation. Berger sought leave to appeal to the Court of
Appeals, but leave was denied. Berger then sought leave to
appeal to the Supreme Court, which, in lieu of granting leave,
remanded to the Court of Appeals for consideration as on leave
granted. 424 Mich 893 (1986).

On remand, the Court of Appeals *held:*

It was proper for the hearing officer to consider Berger's
testimony and the parties' exhibits, including the medical
evaluations, since no objections were made to that evidence. ·
That evidence indicated that Berger's injury was caused by his
employment and the gripping involved. Objective findings by
plant medical personnel and more substantial treatment by
Berger's family physician were not requirements for recovery
and were irrelevant to the issues before the WCAB. Because the
WCAB never had a proper reason for rejecting the evidence of
the evaluation by Berger's family physician, that evidence must
be regarded as undisputed and controlling, and where the WCAB
rejects undisputed controlling testimony in making its findings,
the Court of Appeals must reject those findings and apply the

REFERENCES

Am Jur 2d, Workmen's Compensation §§ 533, 536, 630 *et seq.*

Consideration, in determining facts, of inadmissible hearsay evi-
dence introduced without objection. 79 ALR2d 890.

See also the annotations in the Index to Annotations under Work-
ers' Compensation.

law to the evidence presented in the record. The WCAB erred in reversing the decision of the hearing officer.

Reversed and remanded for reinstatement of the hearing officer's award of workers' compensation benefits.

DANHOF, C.J., dissented. He would affirm the decision of the WCAB on the ground that it cannot be concluded that the WCAB did not find the written hearsay statements of Berger's family physician unworthy of belief. Furthermore, even if the evidence was uncontroverted, the WCAB should still be able to question its validity. He would hold that, under the circumstances of this case and because there was no medical testimony which had been taken under oath or which had been tested by cross-examination on the issue of causation, the WCAB should not be compelled as a matter of law to accept Berger's claim that his injury was causally related to his tenure on the "rail pin-up" job.

1. WORKERS' COMPENSATION — APPEAL.

The Court of Appeals, where the Workers' Compensation Appeal Board rejects undisputed controlling testimony in making its findings, must reject those findings and apply the law to the evidence presented in the record.

2. WORKERS' COMPENSATION — APPEAL — INFERENCES.

The Workers' Compensation Appeal Board cannot draw inferences contrary to undisputed evidence.

3. EVIDENCE — HEARSAY.

Hearsay evidence admitted without objection generally is proper for consideration by the trier of facts.

4. WORKERS' COMPENSATION — EVIDENCE — PRESUMPTION OF VERITY.

Evidence relied upon by both sides in a workers' compensation case is entitled to a strong presumption that it is worthy of belief where the Workers' Compensation Appeal Board does not expressly reject that evidence.

*Rosenberg, Vigiletti, Gebauer & McCrandall, P.C.* (by *Susan A. McCrandall*), for plaintiff.

*Munroe V. Nobach, P.C.* (by *Cameron C. Mc-Comb*), for defendant.

Before: DANHOF, C.J., and SHEPHERD and D. L.
HOBSON,* JJ.

SHEPHERD, J. This is a workers' compensation
appeal. The hearing officer awarded plaintiff com-
pensation benefits for the closed periods April 23,
1983, to May 1, 1983, and June 19, 1983, to July
17, 1983. The Workers' Compensation Appeal
Board reversed. This Court originally denied plain-
tiff's application for leave to appeal on July 25,
1985. The Supreme Court remanded the case on
March 5, 1986, for consideration as on leave
granted. *Berger v General Motors Corp,* 424 Mich
893 (1986). We reverse.

Plaintiff filed two appeals to the WCAB, which
were considered jointly. Only the second appeal is
at issue.

Plaintiff filed his second petition for a hearing
on May 13, 1983, alleging that on April 22, 1983,
plaintiff developed a disabling condition caused by
the constant repetitive use of his hands in grip-
ping rails at his work. A hearing was held on
January 24, 1984.

Plaintiff testified that "on and off" for ten years
he installed stabilizer bars in trucks. When pro-
duction requirements declined, however, plaintiff
was assigned to various other jobs. Eventually he
was placed in frame assembly. Plaintiff's job was
to pick up and drop rails on a hook with the
assistance of another employee. Two rails were
used for each frame. Each rail weighed 125 to 150
pounds and was approximately eight feet long.
After the rails were dropped on the hook, plaintiff
riveted metal parts to the rails in four places.
Plaintiff had difficulty keeping up with the produc-
tion line speed of fifty-two per hour. He com-

* Recorder's Court judge, sitting on the Court of Appeals by assign-
ment.

plained that his co-worker would drop the other end of the rail on the hook before plaintiff was ready, sending vibrations up the rail to plaintiffs hands.' He also had difficulty lining up the brackets to be attached to the rails. Plaintiff stated that the foreman would yell at him when he was too slow in performing his task because it slowed down or stopped the production line.

After a week and a half, plaintiff "started having trouble" with his hands. He would wake up in the middle of every night and "have to pound against the wall to get feeling in them." He went to first aid at work two or three times and his hands were treated by being placed in a whirlpool. He was told after the third visit to file a claim for workers' compensation benefits. Plaintiff received a medical evaluation from his family physician, Dr. House, who recommended that plaintiff not return to the rail pin-up job. Plaintiff also received a medical evaluation from the plant physician, Dr. Benkirk, who recommended that plaintiff be restricted to jobs requiring limited gripping for two weeks. Plaintiff ultimately went on sick leave from April 23, 1983, to May 2, 1983, because his hands were bothering him. While on sick leave, Dr. House treated plaintiff with some unspecified medication.

When plaintiff returned to work, he was assigned to a "prop shaft job," which required installing and tightening two bolts on a shaft with an air gun. After six to seven weeks, plaintiff again started waking up in the middle of the night with a numbness in his hands. He also developed a stomach problem and came close to passing out on the assembly line. He took sick leave from June 19, 1983, to July 17, 1983. Plaintiff eventually returned to the stabilizer job and had not gone on sick leave up to the time of the hearing. He

testified, however, that he still had trouble with his hands on occasion, resulting in a tingling feeling or absence of feeling and that he still pounded them on the wall in the night to return feeling to them.

Numerous documents were admitted by both parties with no objections. Included were Dr. House's medical evaluations. These were introduced by defendant and consisted of responses on claim forms for accident and sickness benefits. In the April 25, 1983, evaluation, Dr. House stated "yes" in response to the question "In your opinion, is the patient's disability caused by his work for General Motors or any other employer?" As explanation, Dr. House noted that the problem was from vibrations and gripping. In the section requesting diagnosis, Dr. House described a decrease in nerve sensation and "numbness in hands from use of vibrating tool grips." On the June 22, 1983, evaluation, Dr. House again answered yes to the question regarding the cause of plaintiff's disability and explained that the problem was from vibrations. He repeated his earlier diagnosis. On July 6, 1983, Dr. House also diagnosed acute anxiety reactions and hypoglycemia in a supplementary report on plaintiff's claim for sickness and accident benefits.

The hearing officer awarded plaintiff benefits for both closed periods. The WCAB reversed in a two-to-one decision. The majority indicated that, in the absence of medical depositions, all it had to evaluate was plaintiff's testimony:

> We do not doubt that plaintiff at one time had a problem with numbness in his hands but the testimony that he gave at trial does not convince us that it was related to his work. Just because its occurrence [sic] was contiguous with his job of

picking up the rails does not show by a preponderance of the evidence that it was caused by this work. Moreover, the numbness was still present off and on during the time he was returned to the prop shaft job. There were no objective findings by the medical personnel at the plant and the treatment by Dr. House, whatever it was, was minimal to say the least. We believe the closed awards granted by the Administrative Law Judge were incorrect based on our review of his record and we hereby reverse. All benefits are denied.

Dissenting member Phelps would have affirmed on the basis of Dr. House's statements in the evaluation, admitted into the record without limitation.

A claimant must prove his or her entitlement to workers' compensation benefits by a preponderance of the evidence. *Aquilina v General Motors Corp,* 403 Mich 206, 211; 267 NW2d 923 (1978). The standard of appellate review of WCAB decisions, however, is provided for by Const 1963, art 6, § 28. See *Aquilina, supra,* p 213, n 4. Fact-findings made by the WCAB are conclusive in the absence of fraud if there is any competent evidence in the record to support them. *Schaefer v Williamston Community Schools (After Remand),* 150 Mich App 186, 190; 387 NW2d 856 (1986).

Where the WCAB rejects undisputed controlling testimony in making its findings, this Court must reject those findings and apply the law to the evidence presented in the record. *Cornish v Jackson & Tindle, Inc,* 285 Mich 566, 569; 281 NW 329 (1938); *Gacesa v Consumers Power Co,* 220 Mich 338, 341; 190 NW 279 (1922). The WCAB cannot draw inferences contrary to undisputed evidence. *White v Revere Copper & Brass, Inc,* 383 Mich 457, 462-463; 175 NW2d 774 (1970).

The evidence presented at the hearing consisted of plaintiff's testimony and the parties' exhibits,

including plaintiff's medical evaluations. No objections were made to the latter. As such, it was proper for the trier of fact to consider this evidence. *Holford v General Motors Corp,* 116 Mich App 488, 490-491; 323 NW2d 454 (1982). This evidence indicated that plaintiff's injury was caused by his employment and the gripping involved. The WCAB never found that Dr. House's evaluations or opinions, however cursory, were unworthy of belief. The WCAB only indicated that his treatment of plaintiff was "minimal" and that plant medical personnel made no objective findings. Such findings by plant personnel and more substantial treatment by Dr. House were not requirements for recovery and were irrelevant to the issues before the WCAB. As the WCAB never rejected Dr. House's evidence, at least for a proper reason, we are inclined to regard it as undisputed and controlling.

This is thus not a case such as *Kido v Chrysler Corp,* 1 Mich App 431; 136 NW2d 773 (1965), where the plaintiff's evidence was unrebutted but also unsupported. We recognize that the WCAB is not "obliged to accept or extend verity to any expert opinion." *Fergus v Chrysler Corp (After Remand),* 67 Mich App 106, 111-113; 240 NW2d 286 (1976), lv den 406 Mich 870 (1979). Had the WCAB said that Dr. House's evidence was not believable, our result would be different and we would defer to that finding. If the WCAB disbelieved such evidence, however, it should have expressly said so, rather than leaving this Court to infer a rejection. If the WCAB rejected the evidence, it apparently did so because of a preference for a different source of evidence (plant medical personnel) and a feeling that Dr. House's subsequent treatment was insufficient. We do not believe the WCAB should reject the evidence for such improper

reasons. A strong presumption should exist in favor of evidence relied upon by both sides when the WCAB does not expressly reject that evidence. Furthermore the WCAB's concern that the absence of evidence from plant medical personnel was of crucial importance is not well placed in light of the fact that it was the defendant employer who introduced the report of plaintiff's physician into evidence.

We therefore believe the WCAB erred in reversing the decision of the hearing officer. We reverse and remand for reinstatement of the hearing officer's award of workers' compensation benefits.

Reversed and remanded.

D. L. Hobson, J., concurred.

Danhof, C.J. (dissenting). I respectfully dissent.

I do not believe that it can be concluded that the WCAB did not find the written hearsay statements of Dr. House unworthy of belief. By concluding that the plaintiff had not fulfilled his burden of proof, the WCAB implicitly concluded that it was not convinced by Dr. House's statements.

In addition, the WCAB is not required to accept hearsay statements, such as were presented in the instant case, even if they are unrebutted.[1] While the majority correctly notes that this Court has held that hearsay statements may be considered by the WCAB when no objection is raised, *Holford v General Motors Corp,* 116 Mich App 488; 323 NW2d 454 (1982), such a rule does not concern the weight which the WCAB must give such evidence. Even if the evidence is facially uncontroverted, the

---

[1] There is also a question whether the expert opinion evidence was in fact "unrebutted." Frequently, logical inferences drawn from non-expert testimony or evidence may call expert testimony into question. It could be concluded from the facts discussed *infra* that the issue of causation was in fact controverted.

WCAB should still be able to question its validity, as the facts of the instant case strongly demonstrate. The expert opinion evidence upon which the majority relies in the instant case is nothing more than hastily scribbled responses to questions on three identical claim forms for sickness and accident benefits. The physician's office completed these forms on different occasions one or two days after treatment was rendered to plaintiff. It is not clear that Dr. House signed these forms himself or what part he played in their completion. One of the three forms was "signed" with a rubber stamp of Dr. House's signature. Someone else's initials in parentheses followed the "signature." It is possible that these forms were routinely completed by clerical personnel.

Moreover, it has been held that the WCAB is not "obliged to accept or extend verity to any expert opinion," *Fergus v Chrysler Corp (After Remand)*, 67 Mich App 106, 112; 240 NW2d 286 (1976), lv den 406 Mich 870 (1979), citing *Koschay v Barnett Pontiac, Inc*, 386 Mich 223; 191 NW2d 334 (1971). Such a rule applies with even more force when the expert opinion is hearsay.

In my opinion, evidence in the record casts a questionable light on plaintiff's assertion that the numbness in his hands was caused by the "rail pin-up job." Plaintiff only worked on that job for three to four weeks. There were no objective symptoms. During the same period of time, plaintiff also suffered from a condition which was variously described as an emotional disorder, depression, and anxiety.[2] Defendant also complained of chest and stomach problems and testified that on one

---

[2] That illness was the subject of another appeal to the WCAB. In that appeal, the WCAB concluded that plaintiff had failed to show there was a causal or aggravational relationship between the nervous condition and his employment.

occasion he almost fainted. The record also suggests that plaintiff possibly suffered from diabetes and hypoglycemia. An unsigned memo in defendant's medical file stated: "per foreman—every time employee is unhappy w/job or foreman he is asking to spend time at Medical." Finally, the file indicates a long list of a variety of other medical complaints over the course of several years. Under these circumstances and because there was no medical testimony which had been taken under oath or which had been tested by cross-examination on the issue of causation, the WCAB should not be compelled as a matter of law to accept plaintiff's claim that his injury was causally related to his tenure on the "rail pin-up" job.

The cases upon which the majority relies stand generally for the proposition that the WCAB may not draw inferences contrary to undisputed evidence. There is a difference between drawing an inference that is totally contrary to all of the evidence on point and rejecting a plaintiff's theory in situations where the proffered proof is weak (but uncontroverted). *White v Revere Copper & Brass, Inc,* 383 Mich 457, 462; 175 NW2d 774 (1970). The authority to reject a plaintiff's weakly supported theory of a case is inherent in the WCAB's role as factfinder. *Kido v Chrysler Corp,* 1 Mich App 431, 433; 136 NW2d 773 (1965).

I would affirm the decision of the WCAB.