*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

AHMED OMER,

        Plaintiff-Appellant,

v

STEEL TECHNOLOGIES, INC.,
and NEW HAMPSHIRE INSURANCE CO.,

        Defendants-Appellees,

FOR PUBLICATION
April 16, 2020
9:00 a.m.

No.  344310
MCAC
LC No.  14-000013

Before:  O'BRIEN, P.J., and JANSEN and GLEICHER, JJ.

PER CURIAM.

What is "competent evidence?"  Generally speaking, it is evidence that is relevant and tends to establish a fact at issue.  In the workers' compensation setting, competent evidence need not be admissible under the rules of evidence.  Rather, the rules of evidence are followed only "as far as practicable," and "a magistrate may admit and give probative effect to evidence of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs."  MCL 418.841(6).

Here, the magistrate considered the testimony of Ahmed Omer's treating physician on the question of whether Omer was disabled as a result of a work injury.  Crediting that testimony and other record evidence, the magistrate issued a closed award encompassing approximately eight months of work-related disability.  The Michigan Compensation Appellate Commission (MCAC) reversed, holding that the physician's testimony did not constitute competent evidence of disability.  Because the MCAC applied an incorrect rule of law, we reverse and remand for entry of an order in Omer's favor.

Omer began working for defendant Steel Technologies, Inc., in 2004, when he was 18 years old. His first job was as a material handler. He progressed to a truck loader, then a crane operator, and in January 2011, worked as a slitter operator. In that capacity, while "tearing down a set-up," Omer felt pain in his groin area. An examining physician at Concentra Medical Center noted on January 3, 2011, that Omer reported "groin pain" that "began abruptly" and radiated to his scrotum and testicles. Omer's symptoms were exacerbated by activity, pressure, or lifting, and he had no urinary complaints. The physician sent Omer back to work on restricted duty.

Omer returned to Concentra on January 10, 2011, for physical therapy. According to the therapist's note, Omer reported injuring his "lower back/groin area while lifting 30-40 [pound] tool," and that "bending, kneeling, lift/carry" exacerbated his pain. Omer testified that his pain was in his mid-lower back and under his belt. He had not experienced this pain before January 2011, Omer maintained.

On March 10, 2011, Omer again felt pain in his lower back while lifting something at work. He was again sent to Concentra, where the examining physician recorded in relevant part:

> [Patient] reports the pain in his lower back is unchanged. He felt the same pain in his lower back as he had in January. While at work last night, after repeatedly lifting and bending with heavy boxes, he felt sharp pain in his lower back. Patient has been working within the duty restrictions. Patient has not been taking their [sic] meds due to not following instructions. Instructions were clarified. The pain is located on midline lower back and lumbosacral region. The pain is described as moderate, sharp and aching. Pain intensity Level: 6/10. The pain did not radiate. The symptoms are exacerbated by flexion, bending or lifting . . . .

The examiner's assessment was "[l]umbar strain." Omer was returned to work, again with restrictions (no lifting over 10 pounds, no bending more than four times per hour, and no pushing or pulling over 10 pounds of force), and scheduled for physical therapy.

On April 11, 2011, Omer stopped working. He consulted Dr. Abdelkader Fares, whose notes reflect that Omer complained of "[s]evere low back pain, hard to bend on both sides for the last four weeks." Dr. Fares also noted severe tenderness and bilateral spasms. Omer then saw a chiropractor, Dr. Mohamed Saleh. In May 2011, Dr. Saleh filled out a form indicating that Omer was unable to work as of April 11. That form is part of the record; Dr. Saleh did not testify, however, and his office notes were not produced.

In August 2011, Omer consulted his primary care physician, Dr. Nabil Suliman, a specialist in internal medicine. Dr. Suliman testified that he had never treated Omer for low back-related

---

[1] Our factual summary is drawn solely from the magistrate's factual findings, which specifically referenced and described the testimony and certain medical records. The facts recited are not derived from an independent review of the record.

problems before 2011. Dr. Suliman reviewed the report of an MRI obtained in April 2011, which revealed a "diffuse disk [sic] bulge at level L4-L5," and "a broad-based disk [sic] protrusion without stenosis at L5-S1." These findings were consistent with an incident occurring around the time of the MRI, Dr. Suliman opined, and likely were caused by heavy lifting or bending. He elaborated:

> Based on my information like I saw him prior to this reported injury, and at that time he never had any of these symptoms or any of these presentations. So from like history, it seems like it's consistent that probably an injury took place around like that time or earlier that year which really attributed to his complaints of low back pain and leg pain.

> * * *

> Based on my knowledge of his condition and based on the previous like visits that we had prior to this reported injury, I see that there is a correlation between this injury and between the problems that Mr. Omer has since that incident. Since basically all his previous office visits that we had never had any reference to any back injuries or lower extremity symptoms, so I feel that it is probably triggered by that incident.

Dr. Suliman referred Omer for physical therapy and pain management. On August 4, 2011, Dr. Suliman signed a medical certificate stating that Omer suffered from "lumbar disc disease, lumbar radiculopathy," was partially disabled, and was restricted to no excessive bending or twisting, and no lifting more than 20 pounds. Dr. Suliman testified in accordance with this disability certificate that Omer was "unable to perform his work, and he was totally disabled . . . ."

Barbara Feldman, a vocational rehabilitation counselor, gave a deposition on Omer's behalf. She testified to his employment background and vocational capabilities, his wage history, and his wage capabilities with and without restrictions in place. Omer's maximum wage, Feldman testified, was earned as a slitter operator. In the sedentary work category, Feldman explained, Omer would not be capable of returning to a job at which he earned his highest wages.[2] With a 20-pound weight restriction, Feldman was not able to locate a job that paid Omer's maximum preinjury rate of pay. She expressed that Omer's work injury played a role in his inability to return to some or all of the jobs in his qualification range that paid the maximum range. For example, with his restrictions, he could not return to work as a slitter operator, as that job required him to do heavy lifting.

Steel Technologies submitted the deposition of Dr. Brian Roth, who performed a defense medical examination of Omer on December 29, 2011, a few days before Omer returned to work. Dr. Roth testified that Omer demonstrated no clinical signs of injury or pain at that time, and that the disc disease apparent on the MRI appeared degenerative in nature. His review of Omer's medical records was "nonspecific," Dr. Roth explained, and did not provide "clearcut medical

---

[2] Sedentary work encompasses work with a 10-pound lifting restriction, primarily involving sitting.

diagnoses." In Dr. Roth's view, Omer could resume full activities without restrictions. Cindy Ballosh, a rehabilitation consultant retained by Steel Technologies, identified a number of jobs that Omer could perform, in her opinion, with light work restrictions.

Omer returned to work in January 2012 and has worked full-time since then in a restricted capacity.

## II. THE MAGISTRATE'S OPINION AND THE MCAC RULING

After a brief trial and the filing of a number of depositions and medical records, the magistrate issued a 27-page opinion finding that Omer sustained a work injury on January 3, 2011, arising out of and in the course of his employment, and that he was totally disabled and entitled to weekly wage benefits for a closed period from April 12, 2011 through December 29, 2011.

The magistrate found Omer a credible witness. Although the Concentra records did not initially reflect that Omer reported back pain, the magistrate gave credence to the January 10 physical therapy report referencing his back-pain complaint. The magistrate also credited Omer's testimony that he had stopped working on April 11 due to back pain because "[h]e could not do it anymore."

The magistrate found Dr. Suliman credible as well, and specifically quoted Dr. Suliman's expressed opinion that a correlation existed between Omer's injury and his "problems . . . since that incident." The opinion continued:

> Dr. Suliman's credible testimony is supported by the Attending Physician's Statement dated 7/12/2011 prepared by Dr. Saleh which stated 4/11/11 as the date he believes plaintiff was unable to work with subjective symptoms of back pain. Dr. Saleh considered the condition to be due to plaintiff's employment.

Applying the "roadmap" established by the Supreme Court in *Stokes v Chrysler LLC*, 481 Mich 266; 750 NW2d 129 (2008), the magistrate found that Omer had established a disability arising from the January 3, 2011 injury during the period of April 12, 2011 until December 29, 2011. In the lengthy paragraph quoted below, the magistrate identified several different factual bases for his conclusion that Omer had proven a compensable disability: the testimonies of Omer, Dr. Suliman, and Barbara Feldman; Omer's Concentra records; and the disability slips signed by Dr. Saleh. Contrary to the MCAC's later ruling, the "substantial evidence" underlying the magistrate's disability finding was not limited to Dr. Suliman's testimony, as the paragraph below reflects:

> I find that plaintiff's work-related injury prevented him from performing all of the jobs within his qualifications and training which pay maximum wages. This finding is based on the credible testimony of the plaintiff, the credible testimony of Dr. Suliman, Concentra records, disability slips from Dr. Saleh and the vocational testimony of Barbara Feldman. Plaintiff credibly testified that in the late spring, summer and fall of 2011 before he returned to work, while Dr. Saleh and Dr. Suliman had him on total disability, he did not believe he was able to go back and do any job because he was in too much pain. Plaintiff testified that during the period of time that he was on total disability, he could sit for only 20 to 30 minutes

-4-

at a time. Dr. Suliman credibly testified that plaintiff was unable to perform his work and was totally disabled and needed some assistance in some housekeeping work. Dr. Suliman issued a disability certificate stating that plaintiff was totally disabled from 7/1/11 to 8/31/11. This disability slip was dated August 4, 2011. Dr. Suliman testified that the plaintiff has not been able to return to his prior job as a slitter operator at any point during the course of Dr. Suliman's care. Dr. Suliman testified he tried to get plaintiff back to work with some restrictions on February 2, 2012. The restrictions he imposed at that time were no excessive bending or twisting and no lifting more than 20 pounds. Records from Concentra show that when plaintiff was seen on March 10, 2011 he was given restrictions of no lifting over ten pounds, no bending greater than four time[s] per hour and no pushing and/or pulling over ten pounds of force. Barbara Feldman testified that sedentary work is no lifting over ten pounds and primarily sitting, but it could also include standing and walking. Pursuant to the Concentra restrictions, plaintiff would be limited to sedentary work, he would not be capable of returning to a job at which he earned his highest wages. There was no evidence of any other restrictions until Dr. Suliman imposed restrictions of no excessive bending or twisting and no lifting more than 20 pounds. Barbara Feldman testified that with the 20-pound weight restriction, she was not able to find a job that pays plaintiff's maximum pre-injury rate of pay. Disability slips from Dr. Saleh/Family Wellness state that plaintiff was unable to work, low back pain due to work injury, from 4/12/11 to 6/30/11.

The magistrate also deemed Dr. Roth credible, and accepted his opinion that Omer's period of disability ended on December 29, 2011.

Defendants appealed the magistrate's decision to the MCAC, contending that the magistrate erred by concluding that Omer proved he was disabled as a result of a work-related incident and that Omer was totally disabled during the identified time period. According to defendants' brief on appeal, "the Appellate Commission has consistently held that a medical expert may not translate his medical opinion into a vocational outcome by couching his/her ultimate opinion as one of total disability or total inability to work." In support of this proposition, defendants cited two MCAC opinions: *Peterson v Consumers Energy Co*, 2012 Mich ACO 31 and *Lewis v United States Parcel Serv Inc*, 2013 Mich ACO 73.

Omer filed a cross-claim arguing that he was entitled to either an open award of benefits or a remand to permit the magistrate to explain why he found Dr. Roth credible. According to the MCAC, "[e]ssentially, both plaintiff and defendants argued that the magistrate did not sufficiently articulate or establish a basis for his findings." *Omer v Steel Technologies, Inc*, 2018 Mich ACO 15, p 2.

The MCAC adopted the magistrate's summary of the record and left "undisturbed the magistrate's finding of a January 3, 2011[] personal injury arising out of and in the course of plaintiff's employment and the award of all reasonable and necessary medical benefits related to plaintiff's back from January 3, 2011 through December 29, 2011." *Id*. at 5. The MCAC next considered defendants' argument that a doctor cannot give competent testimony on the issue of disability. The MCAC adopted this position, reasoning:

The Commission agrees with defendant's reliance upon *Peterson v Consumers Energy Company*, 2012 Mich ACO 31 at 6, as well as its progeny, such as *Lewis v United Parcel Service Incorporated, et al*, 2013 Mich ACO 73. With respect to proof of disability, the competency of testimony by treating and examining physicians as experts is in the area of identifying injury and/or disease based [on] functional limitations of a physical and/or emotional nature. Their medical training generally does not afford them any particular expertise with respect to how such limitations translate into wage earning limitations in the workplace. Instead, it is the vocational expert who is typically possessed of the expertise to translate the medically identified limitations into employability (wage earning) outcomes. For that reason, where a magistrate's finding of total disability is based upon physician conclusory declarations of total disability, rather than quantification of limitations, described through physical restrictions, which may lead to wage loss, that finding is unsupported by competent evidence. The conclusory statements in this regard of Dr. Suliman and the chiropractor are thus not competent evidence of disability (wage loss). On that basis alone, the Commission reverses the award of weekly wage loss benefits and would likewise deny plaintiff's cross claim for benefits beyond December 29, 2011. [*Omer*, 2018 Mich ACO 15, pp 5-6.]

The MCAC then offered a second ground for denying Omer's claim for wage-loss benefits:

Were a reviewing court of appellate jurisdiction to disagree with this analysis, there remains the misallocation of the burden of proof by the magistrate in addressing the question of partial versus total disability. The burden of proof to show wage loss that results from a work injury always rests with the plaintiff. *Stokes v Chrysler LLC*, 481 Mich 222; 750 NW2nd 129 (2008). It is the plaintiff who must demonstrate not only the existence of a disability, but its extent. The magistrate finds a lack of evidence as to whether plaintiff could find, secure and perform jobs paying less than his maximum wage as a failure of proofs by the defendant and so awards reduced wage loss benefits. It is true that the record reveals that plaintiff's vocational expert performed no labor market survey that would gauge the existence and availability of such jobs. It is also true that the record reflects the plaintiff did not look for work of any kind himself. But these deficiencies are failures by the plaintiff to undertake his burden to quantify the claimed work-related limitation in wage earning capacity. To the extent that this lack of evidence bears upon quantifying the appropriate weekly wage loss benefit to award, they indicate plaintiff has failed to sustain his burden of proving any entitlement to such a benefit. In the face of such failure, no need for the defendant to present rebuttal evidence arises. For this reason as well, we reverse the magistrate to deny any award of weekly wage loss benefits in this case. [*Omer*, 2018 Mich ACO 15, p 6.]

We granted Omer's application for leave to appeal. *Omer v Steel Technologies Incorporated*, unpublished order of the Court of Appeals, entered December 7, 2018 (Docket No. 344310).

## III. STANDARDS OF REVIEW

The standards of review applicable in this case are multi-layered. We begin at ground level with the scope of administrative review by the MCAC, and then address the contours of our judicial review.

The MCAC reviews "the magistrate's factual findings under the 'substantial evidence' standard." *Mudel v Great Atlantic & Pacific Tea Co*, 462 Mich 691, 698; 614 NW2d 607 (2000). Substantial evidence is "such evidence, considering the whole record, as a reasonable mind will accept as adequate to justify the conclusion." MCL 418.861a(3). The MCAC must consider as "conclusive" the findings of fact made by a workers' compensation magistrate, as long as those facts are "supported by competent, material, and substantial evidence on the whole record." *Id*.; see also *Findley v DaimlerChrysler Corp*, 490 Mich 928; 805 NW2d 833 (2011).

The MCAC has *limited* fact-finding power. It may substitute its own factual findings for those of the magistrate when a "qualitative and quantitative analysis" of the record yields a different result. MCL 418.861a(13); see also *Mudel*, 462 Mich at 699-700. However, the MCAC's factual review of the magistrate's opinion is *not* de novo. Rather, it "involves reviewing the whole record, analyzing all the evidence presented, and determining whether the magistrate's decision is supported by competent, material, and substantial evidence." *Mudel*, 462 Mich at 699. In other words, the MCAC must begin by considering the "whole record" to determine whether the evidence considered by the magistrate meets the legislative standard of "competent, material, and substantial evidence." If it does, further review exceeds the MCAC's authority. The MCAC is not empowered to " 'set aside findings merely because alternative findings also could have been supported by substantial evidence on the record.' " *Agueros v Bridgewater Interiors LLC*, 2020 Mich ACO 4, p 2, quoting *In re Payne*, 444 Mich 679, 692; 514 NW2d 121 (1994).

This Court must treat the MCAC's factual findings as conclusive if there is any competent record evidence supporting them. *Mudel*, 462 Mich at 701. But we are empowered to review de novo questions of law embedded within a final order. MCL 418.861a(14); *Stokes*, 481 Mich at 274. "[A] decision of the [MCAC] is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework." *DiBenedetto v West Shore Hosp*, 461 Mich 394, 401-402; 605 NW2d 300 (2000). And whether a statute permits or precludes the admission of evidence is a legal question subject to de novo review. *People v Buie*, 298 Mich App 50, 71; 825 NW2d 361 (2012).

This case first presents two evidentiary questions: whether the testimony of a treating physician is competent evidence of disability in a workers' compensation case, and whether the evidence in this case satisfied the competent evidence standard.

## IV. A TREATING PHYSICIAN'S COMPETENCY TO TESTIFY REGARDING DISABILITY

The MCAC made two "competency" rulings. First, the MCAC expressed that the "competency" of treating physicians "is in the area of identifying injury and/or disease based [on] functional limitations of a physical and/or emotional nature." The MCAC continued: "Their medical training generally does not afford them any particular expertise with respect to how such limitations translate into wage earning limitations in the workplace. Instead, it is the vocational

-7-

expert who is typically possessed of the expertise to translate the medically identified limitations into employability (wage earning) outcomes." Based on the MCAC's determination that a treating physician is not "competent" to opine regarding disability, the MCAC held that "where a magistrate's finding of total disability is based upon physician conclusory declarations of total disability, rather than quantification of limitations, described through physical restrictions, which may lead to wage loss, that finding is unsupported by competent evidence."

This portion of the MCAC's competency ruling conflates two different legal analyses: evidentiary competence and witness competence. Whether the "whole record" contains "competent evidence" of disability is a different question than whether an individual physician is competent to testify regarding disability. We begin with the latter question.

When Dr. Suliman was deposed, defendants did not object to his qualification to testify as an expert witness regarding disability. Without objection, Dr. Suliman engaged in the following colloquy with Omer's counsel:

> *Q.* And what was your thinking as of the summer of 2011 as to his physical abilities?
>
> *A.* That he is unable to perform his work, and he was totally disabled, and . . . like he needed some assistance in some housekeeping work.

Defendant's trial brief, filed five months after Dr. Suliman's deposition, asserted that Dr. Suliman was not qualified to "translate an expert medical opinion into a vocational outcome" "by couching his/her ultimate opinion as one of total disability or total inability to work." Dr. Suliman "failed to delineate" Omer's "specific physical capabilities," defendants urged, rendering his views incompetent.

Whether the preservation requirements applicable in circuit court actions apply in workers' compensation matters is an open question. "Generally, an issue is not properly preserved if it is not raised before, addressed, or decided by the circuit court or administrative tribunal." *AFSCME Council 25 v Faust Pub Library*, 311 Mich App 449, 462; 875 NW2d 254 (2015) (quotation marks and citation omitted). Had defense counsel objected to Dr. Suliman's qualifications to render disability-related opinions, Omer's counsel would have been afforded an opportunity to lay a foundation in that regard. But assuming without deciding that the objection was preserved by filing the trial brief, we find no legal merit to the MCAC's determination that treating physicians "generally" may not provide competent testimony regarding whether a patient's condition results in a compensable disability.

The rules of evidence, which the magistrate must follow "as far as practicable," offer several helpful guideposts. MRE 601 sets forth the general rule that "[u]nless the court finds after questioning a person that the person does not have sufficient physical or mental capacity or sense of obligation to testify truthfully and understandably, every person is competent to be a witness except as otherwise provided in these rules." Dr. Suliman was certainly "competent" to testify under this standard. Other rules address the testimony of expert witnesses. MRE 702 provides that if a court determines that expert testimony will be helpful,

a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 704 states: "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Here, one of the "ultimate issues to be decided by the trier of fact" was whether Omer qualified as disabled.

We glean from these precepts that Dr. Suliman was a "competent" witness as that term is used in the rules of evidence. As a board-certified specialist in internal medicine, Dr. Suliman was presumptively qualified to offer opinion testimony predicated on "knowledge, skill, experience, training, or education." And if qualified as an expert, MRE 704 permitted Dr. Suliman to opine regarding Omer's disability.

The MCAC ruled that "treating and examining physicians" "generally" lack "any particular expertise" regarding how a patient's "functional limitations" "translate into wage earning limitations in the workplace." We find no legal support for that proposition in the rules of evidence, the Worker's Disability Compensation Act, MCL 418.101 *et seq*., or the caselaw. It is certainly true that a *particular* physician may be unqualified to testify in a *particular* case regarding a *particular* disability. For example, an orthopedic surgeon would likely be unqualified to testify regarding the nature, extent, and disabling characteristics of a cardiac arrythmia. But we are aware of no legal or common-sense reason—and defendants have identified none—that a board-certified internist is disqualified as a matter of law from testifying that a patient's severe and lingering back pain disables the patient from lifting more than 20 pounds.[3] Dr. Suliman testified that he personally examined Omer, identified disc abnormalities on Omer's MRI scans, and diagnosed Omer with lumbar disc disease and radiculopathy. These underlying facts supplied "sufficient facts or data" for Dr. Suliman to offer a disability opinion. The *weight* afforded that opinion was for the magistrate to determine.

---

[3] According to the American College of Physicians, specialists in internal medicine

are equipped to handle the broad and comprehensive spectrum of illnesses that affect adults, and are recognized as experts in diagnosis, in treatment of chronic illness, and in health promotion and disease prevention—they are not limited to one type of medical problem or organ system. General internists are equipped to deal with whatever problem a patient brings—no matter how common or rare, or how simple or complex. They are specially trained to solve puzzling diagnostic problems and can handle severe chronic illnesses and situations where several different illnesses may strike at the same time. [American College of Physicians, *About Internal Medicine*, available at <https://www.acponline.org/about-acp/about-internal-medicine> (accessed March 9, 2020).]

Furthermore, treating physicians commonly provide testimony regarding disability in workers' compensation matters. Under MCL 418.841(6), a magistrate may admit and rely on "evidence of a type commonly relied on by reasonably prudent persons in the conduct of their affairs." Historically, the opinion of a treating physician regarding disability—and even disability specifically caused by back pain—has fallen within that realm. For example, the workers' compensation plaintiff in *Woods v Sears, Roebuck & Co*, 135 Mich App 500, 503; 353 NW2d 894 (1984), claimed disability caused by persistent back pain. The magistrate issued a closed award and the MCAC ruled that the plaintiff was entitled to an open award. *Id*. The defendant appealed to this Court, contending that the evidence did not establish that the plaintiff suffered a permanent disability. *Id*. We found "ample evidence to support the appeal board's findings," including the testimony of one of the plaintiff's "treating physicians." *Id*. at 504.[4] Nor did our Supreme Court express any reason to discredit the disability-related testimony of a claimant's treating physicians in *Walker v Loselle Constr Co*, 305 Mich 121; 9 NW2d 29 (1943). To the contrary, the Supreme Court's opinion in that case indicates that the treating physicians' opinions were improperly disregarded by the deputy commissioner. *Id*. at 126-129.

The defendants have not identified a single case holding, as a matter of law, that a treating physician cannot provide competent evidence (or a competent opinion) regarding a claimant's disability. We are unable to locate any rule of evidence, or any logical or legal principles "commonly relied on by reasonably prudent persons," that might support the MCAC's proposed rule. Nor did the MCAC identify any. Indeed, the MCAC's reliance on this purported rule is contradicted by its rulings in other cases that a magistrate is permitted, although not required, to give *greater* weight to the testimony of treating physicians. *Parker v Chrysler Corp*, 1997 Mich ACO 57. In *Parker*, 1997 ACO 57, p 4, the MCAC declared: "[I]t is well within the magistrate's authority to accept the most persuasive medical testimony . . . . Although magistrates often place greater weight on the testimony of treating physicians, they are not compelled to do so."[5] And in *Isaac v Masco Corp*, 2004 Mich ACO 81, p 4, the MCAC wrote:

> The magistrate's choice of which medical expert opinion or opinions to adopt is within his or her discretion and we defer to that choice, if it is reasonable. The magistrate need not adopt expert opinions in their entirety but may give differing weight to different portions of testimony. And, although a magistrate may give preference to a treating expert's opinion, she need not do so.

This Court has also weighed in on the subject, albeit somewhat indirectly. In *Berger v General Motors Corp*, 159 Mich App 171, 175; 406 NW2d 264 (1987), the treating physician answered affirmatively when asked whether the claimant's disability was "caused by his work for General Motors or any other employer?" The magistrate awarded benefits and the MCAC reversed, indicating that only the plaintiff's testimony supported his disability claim as the

---

[4] The MCAC has in other cases stated "with specificity" reasons for *favoring* the testimony of a claimant's treating physician. See *Aaron v Mich Boiler & Engineering*, 185 Mich App 687, 697; 462 NW2d 821 (1990).

[5] The treating physicians in *Parker* testified that the claimant was not disabled due to a psychiatric condition and was able to return to work without restrictions.

-10-

physician's testimony "was minimal to say the least." *Id*. at 176. We noted that no objection had been raised to the question posed to the claimant's treating physician, and that the MCAC never found that the physician's "evaluations or opinions, however cursory, were unworthy of belief." *Id*. at 177. Rather, we held that "[a]s the [MCAC] never rejected [the physician's] evidence, at least for a proper reason, we are inclined to regard it as undisputed and controlling." *Id*. *Berger* was decided before 1990, and we are not bound by its holding. MCR 7.215(J). Nevertheless, we agree with its reasoning. "Minimal" testimony by a treating physician may suffice as "competent, material, and substantial evidence" of disability.

Many other courts have also concluded that a treating physician may competently offer an opinion regarding his or her patient's work-related disability. See *Plummer v Apfel*, 186 F3d 422, 429 (CA 3, 1999) ("Treating physicians' reports should be accorded great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' "); *Lewis v Callahan*, 125 F3d 1436, 1440 (CA 11, 1997) ("[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."); *Shivers v Carnaggio*, 223 Md 585, 588; 165 A2d 898 (1960) ("We think the sound view is that a physician who has, in addition to his medical knowledge, familiarity with and understanding of the activities and occupation of his patient, may express an opinion as to the extent to which the anatomical disability will cause personal or economic disability. Whether in a particular case the physician has such extra-medical knowledge is primarily for the trial judge to decide in the exercise of a sound discretion."); *Spalding v Dep't of Labor & Indus*, 29 Wash 2d 115, 128-129; 186 P2d 76 (1947) ("An attending physician . . . who has cared for and treated a patient over a period of time . . . is better qualified to give an opinion as to the patient's disability than a doctor who has seen and examined the patient once."). We hold that a general, per se rule deeming "incompetent" the opinion testimony of treating physicians regarding disability lacks any legal basis and contravenes MCL 418.841(6).

We turn to the second issue embedded in the MCAC's ruling: *evidentiary* competence. Neither the Worker's Disability Compensation Act nor the rules of evidence define the term "competent evidence." *Black's Law Dictionary* (6th ed) defined the term as: "That which the very nature of the thing to be proven requires, as, the production of a writing where its contents are the subject of inquiry." The Supreme Court cited this definition approvingly in *Goff v Bil-Mar Foods, Inc*, 454 Mich 507, 514 n 5; 563 NW2d 214 (1997), overruled on other grounds by *Mudel*, 462 Mich at 697. The Supreme Court added in *Goff* that "The New World Dictionary, Second College Edition (1974), similarly defines 'competent' as 'well qualified; capable; fit . . .sufficient; adequate.' " *Goff*, 454 Mich at 514 n 5.

The MCAC grossly misapplied the "substantial evidence" standard in holding that Omer failed to present competent evidence of disability. Omer's evidence was not limited to the testimony of Suliman and the disability slip signed by Dr. Saleh. Omer himself testified regarding his disability, and that testimony, in combination with the medical evidence and the testimony of Barbara Feldman, fully satisfied the "substantial" and "competent" evidence requirements.

"The [MCAC] must consider the magistrate's findings of fact conclusive if supported by competent, material, and substantial evidence on the whole record." *Blanzy v Brigadier Gen Contractors, Inc*, 240 Mich App 632, 637; 613 NW2d 392 (2000). To satisfy that standard, the evidence must be "more than a scintilla, but it may be less than a preponderance." *Id*. "Expert

-11-

opinion testimony is 'substantial' if offered by a qualified expert who has a rational basis for his views, whether or not other experts disagree. To hold otherwise would thus neutralize all expert testimony in cases of conflict and the party with the burden of proof would automatically lose." *Aaron v Michigan Boiler & Engineering*, 185 Mich App 687, 698; 462 NW2d 821 (1990) (quotation marks and citations omitted).

The MCAC ruled that Omer failed to present competent evidence in support of his disability claim because "[t]he conclusory statements . . . of Dr. Suliman and the chiropractor are . . . not competent evidence of disability (wage loss)." In so ruling, the MCAC failed to consider the "whole record," which included the testimonies of Omer and Feldman, as well as medical records. There is no magic formula for determining whether the evidence found in the "whole record" satisfies MCL 418.861a(3). Our Supreme Court has held that "the testimony of plaintiff and his wife, *without mor*e, and even though arguably disputed by certain medical witnesses, is sufficient to support" a finding of disability. *Sanford v Ryerson & Haynes, Inc*, 396 Mich 630, 637; 242 NW2d 393 (1976) (emphasis added). More recently, the Supreme Court highlighted that to prove disability a claimant need not even hire an expert—"[T]here are no absolute requirements, and a claimant may choose whatever method he sees fit to prove an entitlement to workers' compensation benefits." *Stokes*, 481 Mich at 282.

The magistrate's lengthy and detailed disability ruling cited not only the testimony of Dr. Suliman and the disability slips signed by Dr. Saleh, but also Omer's "credible" testimony that "he did not believe he was able to go back and do any job because he was in too much pain" and that "he could sit for only 20 to 30 minutes at a time." The magistrate also relied on Dr. Suliman's August 4, 2011 disability slip restricting Omer from excessive bending or twisting and lifting more than 20 pounds, as well as and Feldman's testimony and the "Concentra restrictions," which demonstrated that Omer "would be limited to sedentary work" and that "he would not be capable of returning to a job at which he earned his highest wages." The magistrate added, "Barbara Feldman testified that with the 20-pound weight restriction, she was not able to find a job that pays plaintiff's maximum pre-injury rate of pay."[6]

In sum, the MCAC erred as a matter of law in determining that the evidence underlying the magistrate's decision was incompetent. MCL 418.861a(3) compelled the magistrate to consider the "whole record," defined as "the entire record of the hearing including all of the evidence in favor and all the evidence against a certain determination." If the magistrate's findings are supported by competent, material and substantial evidence on the whole record, the commission must view them as conclusive. *Findley*, 490 Mich at 928. Our Supreme Court has explained that "the MCAC must . . . give deference to the magistrate's factual determinations, and may no longer engage in de novo fact-finding[.]" *Id.* Contrary to the MCAC's conclusion, the record amply supports, with competent evidence, a finding of total disability for a closed period.

---

[6] The MCAC asserted that the magistrate's finding of total disability was premised on "physician conclusory declarations of total disability, rather than quantification of limitations, described through physical restrictions[.]" The record evidence contradicts this contention, as both Dr. Suliman and the Concentra physician placed specific limitations on Omer's activities.

## V. ALLOCATION OF THE BURDEN OF PROOF

The MCAC held that if this Court rejected its competency analysis, it would nevertheless hold that Omer failed to sustain his burden of proving entitlement to total disability benefits. According to the MCAC, the magistrate "misallocat[ed]" the burden of proof by finding a "lack of evidence as to whether plaintiff could find, secure and perform jobs paying less than his maximum wage as a failure of proofs by the defendant and so awards unreduced wage loss benefits." The "deficiencies," the MCAC declared, are attributable to Omer.

The magistrate found that Omer proved that "his work-related injury prevented him from performing some or all of the jobs within his qualifications and training which pay maximum wages" for the period from April 12 through December 29, 2011. The magistrate stated that he based this finding on various sources, including Omer's testimony that "he did not believe he was able to go back and do any job because he was in too much pain" and Dr. Suliman's testimony that Omer was "unable to perform his work and was totally disabled and needed some assistance in some housekeeping work." The magistrate recounted that with the restrictions placed by Dr. Suliman and Concentra, Feldman testified that Omer would be limited to sedentary work, and "would not be capable of returning to a job at which he earned his highest wages." With the 20-pound weight restriction, Feldman explained (and the magistrate accepted as fact), "she was not able to find a job that pays plaintiff's maximum pre-injury rate of pay."

*Stokes* instructs that to satisfy the disability standards encapsulated in MCL 418.301(4), a claimant must offer certain proofs, including a showing that "his work-related injury prevents him from performing some or all of the jobs identified as within his qualifications and training that pay his maximum wages." *Stokes*, 481 Mich at 283. Only if the claimant *is* capable "of performing some or all of the jobs identified jobs as within his qualifications and training that pay his maximum wages" must the claimant show that he cannot obtain these jobs. *Id*.

Based on the testimony recapitulated above, substantial evidence supported the magistrate's finding that Omer established a disability and was entitled to wage loss benefits. As set forth above, the MCAC must consider as "conclusive" the findings of fact made by a workers' compensation magistrate, as long as those facts are supported by competent, material, and substantial evidence on the whole record. MCL 418.861a(3); see also *Findley*, 490 Mich 928. Competent, material, and substantial evidence supported the magistrate's finding. The MCAC misapprehended and grossly misapplied the substantial evidence standard in holding otherwise.

We reverse and remand for entry of an order in Omer's favor. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Elizabeth L. Gleicher

-13-